This action was begun in the Superior Court of Durham County on 22 August, 1935.
The plaintiff is a citizen of the State of North Carolina, and a resident of Durham County in said State.
The defendant is a banking corporation, duly organized and now doing business under and pursuant to the laws of the United States, with its principal place of business in the city of Durham, North Carolina. The defendant began business on 10 January, 1933, its organization having been completed at said date.
In her complaint plaintiff alleges:
"3. That at the time said defendant bank opened for business, to wit: On 10 January, 1933, one George H. Salmon had purchased and paid for and was the owner of 1,378 shares of the capital stock of said defendant bank of the par value of $30.00 per share, and that certificates for all said shares of stock, with the exception of 733 1/3 shares, have been issued by the defendant to the said George H. Salmon, or to his nominees or assignees, but that the defendant has declined to issue to the said George H. Salmon a certificate for the said 733 1/3 shares of stock."
"4. That the said George H. Salmon, for valuable consideration, has sold, transferred, and assigned the said 733 1/3 shares of the capital stock of the defendant bank to the above named plaintiff, together with all rights thereto, and all rights and interests which he has or might have to bring any action for the possession of said shares of stock, or the value thereof, and that plaintiff has made demand on the defendant for a certificate for said 733 1/3 shares of the capital stock of the defendant, or the value thereof, and that the defendant bank has failed and refused to issue to the plaintiff such certificate, although by reason of the assignment of said shares of stock to her by the said George H. Salmon, the plaintiff is now the owner of said 733 1/3 shares of stock, and is justly and legally entitled to a certificate for the same."
"7. That if defendant bank has placed itself in a position where it cannot now deliver a certificate for said 733 1/3 shares of its capital stock to the plaintiff, then and in that event the plaintiff, by reason of the assignment of said shares of stock to her by the said George H. Salmon, is entitled to recover of the defendant the sum of $22,000, the par value of said shares of stock, at the date of the opening of defendant bank for business."
On these allegations the plaintiff prays judgment:
"1. That the defendant be directed to issue to the plaintiff a certificate for 733 1/3 shares of its capital stock; or,
"2. If the defendant has placed itself in a position where it cannot now deliver to the plaintiff a certificate for said shares of its capital *Page 229 
stock, that plaintiff recover of the defendant the sum of $22,000, together with all dividends which have been declared by the defendant on said shares of stock since the opening of the defendant bank.
"3. That plaintiff recover of the defendant the costs of the action, and that she have such other and further relief as she may be entitled to in the premises."
In his answer the defendant denied that at the date of its opening for business, to wit: 10 January, 1933, George H. Salmon had purchased and paid for and was the owner of the 733 1/3 shares of its capital stock, referred to in the complaint; the defendant admitted that it had declined and refused to issue to the said George H. Salmon a certificate for said shares of stock.
The defendant further denied that the said George H. Salmon had sold, transferred, and assigned the said 733 1/3 shares of its capital stock to the plaintiff, and that plaintiff is now the owner of said shares of stock; the defendant admitted that it had declined and refused to issue to the plaintiff a certificate for said 733 1/3 shares of its capital stock.
The defendant prays judgment that plaintiff recover nothing by her action, and that defendant go hence without day and recover of the plaintiff her costs.
At the trial the evidence for both the plaintiff and the defendant showed the following facts:
On 18 January, 1932, the First National Bank of Durham closed its doors and ceased to do business. The Comptroller of the Currency took possession of said bank and on 19 January, 1932, put in charge of said bank a receiver, who had been duly appointed by him. The said receiver took possession of the assets of the First National Bank of Durham, and held the same subject to the orders of the Comptroller of the Currency.
Some time thereafter George H. Salmon, of New York City, came to the city of Durham and submitted to creditors, depositors, and stockholders of the First National Bank of Durham a plan for its reorganization, which had been approved in its general outlines by the Comptroller of the Currency.
Creditors and depositors of the bank were apprehensive that they would suffer heavy losses by the closing of the bank, and its stockholders were confronted with the probability that they would not only lose their stock, but would also be assessed the par value of their stock, as provided by law, in the event of the insolvency of the bank. At meetings of creditors, depositors, and stockholders the plan submitted to them by George H. Salmon for the reorganization of the First National Bank of Durham was fully discussed and finally approved. In accordance with said plan, a reorganization committee was formed, and George H. Salmon was chosen as manager of said committee. The said George H. *Page 230 
Salmon, as manager of the reorganization committee, at once proceeded, with the approval of the Comptroller of the Currency, to perfect said plan.
The plan for the reorganization of the First National Bank of Durham provided for the organization of a new bank, to be known as the Depositors National Bank of Durham, with a capital stock and surplus of $300,000. It was provided in said plan that as soon as the said Depositors National Bank was organized, it should pay to creditors and depositors of the First National Bank of Durham 50 per cent of their claims, in installments, as set out in said plan, and that the assets of the First National Bank of Durham, then in the hands of the receiver of said bank, should be assigned by said receiver to the Depositors National Bank, which should retain a sufficient amount of said assets to reimburse the said bank for sums paid by it on claims of creditors and depositors of the First National Bank of Durham. The remainder of said assets should be assigned and delivered by the Depositors National Bank to liquidating trustees, to be named by said bank, to be held by said liquidating trustees in trust for the creditors and depositors of the First National Bank of Durham. It was further provided in said plan for the reorganization of the First National Bank of Durham that one-half of the capital stock of the Depositors National Bank should be assigned by the subscribers for said capital stock to the liquidating trustees, to be held by said liquidating trustees in trust for the creditors and depositors of the First National Bank of Durham. It was contemplated that by these provisions the amounts remaining due on the claims of creditors and depositors of the First National Bank, after the payment of 50 per cent of said claims by the Depositors National Bank, would ultimately be paid, in whole or in part.
After the plan for the reorganization of the First National Bank of Durham, which was submitted by George H. Salmon to creditors, depositors, and stockholders of said bank, had been approved by the required number of said creditors and depositors, as evidenced by creditors' agreements duly executed by them, George H. Salmon proceeded to secure subscriptions for the capital stock of the Depositors National Bank. He secured subscriptions for $278,000 of said capital stock. There was a deficiency of $22,000. Because of this deficiency, the Depositors National Bank was not organized at the date first set for such organization. Thereupon, George H. Salmon procured agreements for the extension of the date for the organization of said bank, the date finally set for such organization being 10 January, 1933.
After George H. Salmon had procured from creditors and depositors of the First National Bank of Durham, agreements for the extension of the date for the organization of the Depositors National Bank to 10 *Page 231 
January, 1933, in accordance with the plan for the reorganization of the First National Bank of Durham which had been approved by creditors, depositors, and stockholders of said bank and by the Comptroller of the Currency, he renewed his efforts to procure subscriptions for stock in the Depositors National Bank of the par value of $22,000, such subscriptions being required to meet the requirements of said plan.
At the date of the closing of the First National Bank of Durham, the Commercial Casualty Company, of Newark, N. J., as insurer of the deposit in said bank of the American Tobacco Company, had a claim against said bank for a large sum of money. Because of said claim, the Commercial Casualty Company was interested in the reorganization of the First National Bank of Durham in accordance with the plan which had been approved by the creditors, depositors, and stockholders of said bank, and the Comptroller of the Currency. Upon the solicitation of George H. Salmon, the said company agreed to subscribe and pay for stock in the Depositors National Bank of the par value of $22,000, thus assuring the successful completion of the reorganization of the First National Bank of Durham, in the interest of its creditors, depositors, and stockholders. On 24 December, 1932, while negotiations for the organization of the Depositors National Bank were pending, the Commercial Casualty Company wrote a letter to the reorganization committee of the First National Bank of Durham, in which said company said:
"In order to cooperate toward the opening of the new bank, for the good of all concerned, we hereby offer to subscribe for $22,000 of the capital stock of the new bank, and to accept $183,250, in cash, in full settlement of our claim against the old bank. Such stock when received by us as fully paid stock is to be transferred to the liquidating trust of the old bank."
After the said letter was written by the Commercial Casualty Company and received by the reorganization committee of the First National Bank of Durham, the said company was advised by its counsel that if the stock in the Depositors National Bank, for which it had agreed to subscribe, was issued to the company in its own name, the company would be subject to the statutory stockholder's liability, in the event of the subsequent insolvency of the bank. Acting upon this advice, the Commercial Casualty Company notified George H. Salmon that it was not willing to take said stock in its own name, and thereby assume statutory liability for its par value, in addition to the amount which it would be required to pay for said stock. It was thereupon agreed by and between the said company and the said George H. Salmon that the subscription for said stock should be made by George H. Salmon in his own name, and that the company should pay for said stock. Pursuant to this agreement, George H. Salmon signed the certificate for the organization *Page 232 
of the Depositors National Bank, which was dated 6 January, 1933, as a subscriber for 1,378 shares of the capital stock of said bank. These shares included the 733 1/3 shares of the par value of $22,000, which are involved in this action. The Commercial Casualty Company paid for said shares of stock, and after the organization of the Depositors National Bank received from the reorganization committee of the First National Bank of Durham the sum of $183,250, in full settlement of its claim against said bank.
The Depositors National Bank was finally organized with a paid-in capital stock and surplus of $300,000. It began business on 10 January, 1933. At that date, the stock book of the said bank showed that George H. Salmon had subscribed for, and upon his payment of the amount due therefor, would be the owner of 1,378 shares of its capital stock. Certificates for all said shares, except 733 1/3, have been duly issued and delivered to George H. Salmon, or to his nominees or assignees. Certificates for the 733 1/3 shares were filled in the name of George H. Salmon by an employee of the bank, but have never been issued or delivered to him. These certificates were subsequently canceled. New certificates for said shares were filled in in the name of the liquidating trustees of the First National Bank of Durham, and were subsequently issued and delivered to said liquidating trustees. They are now held by said trustees in trust for the creditors and depositors of the First National Bank of Durham in accordance with the agreement of the Commercial Casualty Company and the reorganization committee of said bank. Demand was first made on the defendant by attorneys for George H. Salmon for the issuance to him of certificates for said shares, on 1 December, 1934. This demand was refused. Prior to that date George H. Salmon had been informed by the president of the defendant bank that the directors of said bank declined to recognize him as the owner of said shares of stock.
Some time prior to 10 January, 1933, the date of the opening of the defendant bank for business, George H. Salmon executed and delivered to the Durham Loan and Trust Company his note for the sum of $15,000. The payment of this note was secured by certificates for 300 shares of the American Tobacco Company, which were owned by the plaintiff, Miss Maggie E. Holloway, and which she had loaned to the said George H. Salmon in order that he might deposit the same with the Durham Loan and Trust Company as security for his note. The said note has not been paid. The certificates for 300 shares of the stock of the American Tobacco Company, owned by the plaintiff and loaned by her to George H. Salmon for deposit by him with the Durham Loan and Trust Company as security for his note, are now held by the Durham Loan and Trust Company. George H. Salmon is now unable to pay said note, and thereby redeem said certificates of stock in the American Tobacco Company. *Page 233 
On 27 July, 1935, George H. Salmon executed a paper writing which in form is an assignment by him to the plaintiff of all his right, title, and interest in and to the 733 1/3 shares of the capital stock of the defendant bank, covered by his subscription, but paid for by the Commercial Casualty Company. By said paper writing the said George H. Salmon authorized and directed the defendant to issue and deliver to the plaintiff a certificate for said 733 1/3 shares of its capital stock. The plaintiff has demanded that the defendant issue and deliver to her a certificate for said shares of stock. The defendant has refused said demand.
The paper writing executed by George H. Salmon includes a paragraph as follows:
"In the event it should be impossible or impracticable to obtain the stock, this assignment includes all rights or claims which I may have for the recovery of the value of said stock, and the said Maggie E. Holloway is fully authorized to include in any suit brought for the recovery of said stock the claim for the value of the same at the time the same should have been issued and delivered."
At the close of the evidence showing the foregoing facts, the defendant moved that the action be dismissed by judgment as of nonsuit. This motion was denied, and the defendant duly excepted.
The issues submitted to the jury were answered as follows:
"1. On 10 January, 1933, had George H. Salmon purchased and paid for and did he own the 733 1/3 shares of the capital stock of the Depositors National Bank, as alleged in the complaint? Answer: `Yes.'
"2. Did George H. Salmon assign to the plaintiff 733 1/3 shares of the capital stock of the Depositors National Bank of Durham, as alleged in the complaint? Answer: `Yes.'"
Judgment was thereupon rendered as follows:
"This cause coming on to be heard, and being heard before his Honor, J. Paul Frizzelle, and a jury, and the following issues having been submitted to the jury:
"(1) On 10 January, 1933, had George H. Salmon purchased and paid for and did he then own the 733 1/3 shares of the capital stock of the Depositors National Bank of Durham, as alleged in the complaint?
"(2) Did George H. Salmon assign to plaintiff 733 1/3 shares of the capital stock of the Depositors National Bank of Durham, as alleged in the complaint?
"And the jury having answered the first issue `Yes,' and the second issue `Yes'; and
"It appearing to the court and the court finding as a fact from the admissions of the defendant that no part of said 733 1/3 shares of stock of *Page 234 
the Depositors National Bank referred to in the pleadings has ever been issued by the defendant to George H. Salmon, or the plaintiff, his assignee;
"Now, therefore, it is ordered, considered, adjudged, and decreed by the court that the plaintiff, Miss Maggie E. Holloway, is the owner and entitled to the possession of the 733 1/3 shares of capital stock of the Depositors National Bank referred to and described in the complaint, and it is further ordered and decreed by the court that the defendant Depositors National Bank of Durham shall, within 60 days from 8 April, 1936, issue and deliver to the plaintiff, Miss Maggie E. Holloway, a certificate or certificates representing 733 1/3 shares of the capital stock of the Depositors National Bank of Durham, N.C.
"It is further ordered that this cause be retained to the end that if the said defendant Depositors National Bank of Durham, N.C. has placed itself in a position where it is unable to make delivery of said stock, that an appropriate issue may be submitted to a jury to determine the value of the same.
"It is further ordered that the cost of the action be taxed against the defendant."
From this judgment the defendant appealed to the Supreme Court, assigning errors in the trial and in the judgment.
By the terms of the assignment to her executed by George H. Salmon on 27 July, 1935, the plaintiff has only such right, title, and interest in the shares of stock described in the complaint, as the said George H. Salmon had at the date of the said assignment. She is not an innocent purchaser of said shares of stock. She took the said assignment with notice on its face that the defendant had denied that George H. Salmon was the owner of said shares of stock, and had refused his demand for a certificate for the same. It follows that if George H. Salmon had no right, title, or interest in said shares of stock, at the date of the assignment, the plaintiff cannot recover in this action, and there was error in the refusal of the trial court to dismiss the action by judgment as of nonsuit.
All the evidence showed that George H. Salmon paid nothing for the shares of stock which he undertook to assign to the plaintiff, and that when he subscribed for said shares of stock he did so upon the agreement of the Commercial Casualty Company that it would pay for said shares of stock, and that when a certificate was issued for said shares, it would be transferred to the liquidating trustees of the First National Bank of *Page 235 
Durham. George H. Salmon had no right, title, or interest in said shares of stock, at the date of the organization of the defendant bank or at the date of his assignment to the plaintiff.
There was error in the refusal of the trial court to allow the defendant's motion for judgment as of nonsuit, and in the judgment appearing in the record. For this error the judgment is reversed and the action remanded to the Superior Court of Durham County that judgment may be entered in said court dismissing the action.
Reversed.