HARRY'S CADILLAC-PONTIAC COMPANY, INC. v. DR. CHARLES S. NORBURN.

(Filed 2 March, 1949.)

**1. Vendor and Purchaser § 5b—**

After the purchaser had signed the contract, the seller made material changes therein in the purchaser's presence, and signed it. *Held:* The fact that the purchaser did not re-sign the agreement after the alterations does not change the instrument £rom a contract of sale to a mere option, since the purchaser's acceptance of the agreement as changed with knowledge that it was to be notarized and recorded, is a ratification and adoption of his signature without affixing another.

**2. Frauds, Statute of, § 10—**

The fact that the assignment by the purchaser of a contract to convey is by parol is no defense to an action on the contract by the assignee against the vendor, since the statute of frauds is a personal defense which may be set up only *inter partes.*

**3. Assignments § 1: Vendor and Purchaser § 5a—**

A contract to convey is assignable, and the assignee may maintain an action thereon against the seller for specific performance.

**4. Corporations § 20: Principal and Agent § 7e—**

Where the president of a corporation executes a contract to purchase realty in his own name, but acts throughout the transaction as undisclosed agent of the corporation, the corporation has the right to sue thereon in its own name.

**5. Assignments § 1: Vendor and Purchaser § 5a—**

The contract to convey in suit stipulated that one-half the purchase price should be paid in cash and the remainder thereof secured by purchase money deed of trust securing two notes of equal amount payable one and two years after execution of the instrument. *Held:* The contention that the contract was executed in reliance upon the personal credit of the purchaser and therefore was unassignable, is untenable in the absence of some provision in the instrument against assignment or some circumstance judicially recognizable *dehors* the agreement.

**6. Vendor and Purchaser § 18—**

Ordinarily, a mere provision in a contract to convey that it should be completed by a specified date is insufficient to constitute time the essence of the contract, and evidence in this case disclosing that the failure of the purchaser to make payment within the time stipulated was due to the fact that the seller made himself inaccessible, and, further, that the seller's attorney advised that a later date would serve, *is held* insufficient to sustain the seller's motion to nonsuit on the ground that the contract was not completed on the day specified.

PLAINTIFF's appeal from *Shuford, Special Judge,* October "A" Term, 1948, BUNCOMBE Superior Court.

The plaintiff sued for specific performance of a contract for the purchase and sale of real estate reading as follows:

"State of North Carolina
County of Buncombe

"This agreement made and entered into, this the 19th day of October, A. D. 1945, by and between Dr. Charles Norburn, the seller, of the County of Buncombe, State of North Carolina, and Harry Blomberg, the purchaser, of the County of Buncombe, State of North Carolina, Witnesseth:

"That the seller hereby agrees to sell, and the purchaser hereby agrees to purchase, at the price, and upon the terms hereinafter set out.

"All of that certain tract or parcel of land, situate, lying and being in the City of Asheville, County of Buncombe, State of North Carolina, and being described as follows:

"Being lot 167¾, sheet 1, ward 3, as shown on the city tax map of Asheville. Said lot being located on the East side of Page Avenue, Battery Park Hill, the size being approximately 25 feet frontage by 70 feet on the North line and 83 feet on the South line.

"With all the rights and easements appertaining thereto, but subject to restrictions, reservations and conditions of record.

"The purchaser agrees to pay for said land the sum of Eight Thousand Dollars ($8,000.00); of which Two hundred Fifty Dollars ($250.00) has been paid upon the execution and delivery of this contract, and the balance of said purchase money to be paid as follows: ½ Cash—1 & 2 years, additional cash to be paid upon delivery of deed and the remaining to be secured by a first deed of trust to be given back on said lot supported by two notes of equal amount due and payable on or before one and two years after date of said deed of trust. These notes to bear 5% interest.

"It is agreed that the deposit of $250.00 is to be held by R. P. Booth & Company, Realtor, until the completion of the terms of this contract; upon failure of execution by the seller within 3 days, the deposit shall be returned to the purchaser.

"That the seller agrees and binds himself, his heirs, executors or administrators, upon the payment of the purchase price, as hereinbefore provided, to execute and deliver to the purchaser, or assignee, a good and sufficient deed, in fee simple, conveying said land and premises, free from all liens and encumbrances, except restrictions of record, except as herein provided and taxes for the year of 1945 to be prorated to date of sale, and all prior taxes paid.

"It is agreed that settlement under this contract shall be completed on or before November, 20, A. D. 1945.

"In testimony, the said parties have hereto set their hands and seals, this the day and year first above written.

HARRY BLOMBERG   (Seal)

CHARLES S. NORBURN   (Seal)"

The plaintiff alleged that the interest of Harry Blomberg in the contract had been assigned to it, and that it had fully performed the contract as it related to it, and that the defendant wrongfully refuses to comply with its provisions and convey the land.

The defendant especially denies that there is any contract between himself and the plaintiff, and avers that the alleged assignment of the rights under it to the plaintiff was not in writing. He further sets up as a defense that if plaintiff had any right under the contract sued upon, it became extinguished by failure of the plaintiff to comply with the contract, or complete the settlement on or before November 20, 1945, as stipulated.

The plaintiff put the contract in evidence and proceeded with testimony. Roy Booth testified that he was the broker or selling agent who handled the transaction and that he saw Harry Blomberg and Dr. Norburn sign the document. That Norburn signed the contract after certain changes appearing on the face of the document had been made, and that Blomberg accepted the contract as so amended. He explained that the change had been made because Dr. Norburn had meantime raised his price from $6,250. Parts of the alterations were made in witness' handwriting and part in Dr. Norburn's. Witness notified Dr. Norburn of Blomberg's acceptance, and went ahead to prepare the papers to complete the transaction.

Booth prepared the notes and deeds of trust on November 17, and these were marked as identified by him.

The witness went to the Norburn Hospital on the 20th day of November, 1945. He was unable to contact Dr. Norburn on his first trip, being informed he was in the operating room. He went back at 3:00 o'clock the same day and made an effort to contact him. He went back at 5:00 o'clock the same day and made an effort to see him, but was unable to do so. The secretary told him he was still in the operating room. He made other efforts to contact Dr. Norburn. He went on the morning of the 21st, and was told by the secretary to see Mr. Pangle. Mr. Pangle was a lawyer, then a patient in the hospital. Mr. Pangle took the papers, looked them over, and said he was not instructed to deliver the deed at that time, witness might see him next day—that he would see Dr. Norburn, and witness might see him next day. When witness went back Mr. Pangle had been discharged from the hospital. He contacted Dr. Norburn by telephone. He left the deed of trust notes and check with the secretary, and on December 4, 1945, received the papers including check, in a letter

from Dr. Norburn. The letter was identified and introduced in evidence. It is as follows:

"I am returning by registered mail the deed in trust made by Harry's Cadillac and Pontiac Company, together with two notes of $2,000 each, dated November 17, 1945, and payable on or before one and two years after date respectively. Also the check for $4,017.50, drawn by this company in my favor, their number 386.

"The man with whom I was trying to deal in this transaction has refused to trade, and I therefore have no reason to make the deal now.

"Kindly acknowledge receipt of the above listed enclosures.

Yours very truly,
C. S. NORBURN."

Witness stated:

"Had I made contact and gotten the deed and checked the description and all, I could have closed that evening, but not doing that I made no further effort to do that until the next morning. I know the Register of Deeds has a record of deeds. I could have gone there and gotten the description. I did not do that. I could have made delivery of the deed of trust and the two notes and the check on the 20th, but I did not. When I went there I went there preparatory to getting ready."

After that he went to see Dr. Norburn, and was told by him he did not care to close the sale and would rather not go through with it.

He further testified that he did not go to the hospital on Thanksgiving Day. He went before Thanksgiving Day and the day after. "That was the day after I was not able to deliver the deed of trust properly executed and the notes and check." Dr. Norburn had said he wanted the sale closed by the 20th because he wanted to buy some blooded stock that were to be sold that day.

Harry Blomberg testified that he signed the contract offered in evidence. At that time he was President of Harry's Cadillac Co., Inc.; that he bought the lot in his own name and turned it over to the corporation. It was needed as a place to get in and out.

The minutes of the directors' meeting (Harry's Cadillac-Pontiac Company) of November 15, 1945, were introduced showing taking over the interest acquired by Blomberg in the contract of sale above set out and assuming all of its obligations, and authorizing the officers of the concern to consummate the transaction.

The notes, two each in the sum of $2,000, deed of trust, dated November 17, 1945, and check dated November 20, in the sum of $4,017.50, were put in evidence.

The witness stated that the contract, with the interlineations, signed by Dr. Norburn, had been exhibited to him, and accepted by him; that he was buying the property for the corporation and assigned the contract to it. A meeting was called and the minutes drawn up.

The minutes were put in evidence.

On cross-examination witness stated that he did not sign a separate assignment of the sales contract to the corporation but did sign the minutes when it was taken over by the Cadillac-Pontiac Co. He did not re-sign the contract of sale after the changes made in it, but accepted it. He executed the various papers relating to the deed of trust, and the deed of trust itself, November 17.

On re-direct examination he stated that he had never been tendered a deed at all.

Roy Booth testified that neither Dr. Norburn or any other person had tendered to him a deed for the property.

Witness stated he left the deed of trust, notes and checks with Dr. Norburn's secretary, at his office. At that time they were not signed. When he took them to Mr. Pangle on the 21st they had been signed and acknowledged.

At the conclusion of plaintiff's evidence the defendant demurred and moved for judgment of nonsuit. The motion was allowed, and plaintiff excepted and appealed.

*James S. Howell and Oscar Stanton for plaintiff, appellant.*
*Smathers & Meekins for defendant, appellee.*

SEAWELL, J. We need consider here only one exception taken by the plaintiff on the trial; the exception to the judgment of nonsuit on the demurrer to the evidence. The trial judge did not state on what theory the nonsuit was granted. He did not need to do so if the judgment could be sustained on any legal ground. But under the noted exception we may deal with the attack on plaintiff's position on the theory that one or more of the objections discussed in the brief and oral argument prevailed.

The theory that the contract of sale on which plaintiff sues was a mere option or unilateral offer on the part of Dr. Norburn because it was not re-signed by Blomberg after certain changes in it were called to his attention, is not sound. Blomberg's acceptance of the agreement as changed, with the knowledge that it was to be so notarized and recorded, was a ratification and adoption of the signature without affixation of another.

The fact that assignment of the rights under the contract by Blomberg to the corporation was in parol, if it was, and, therefore, within the statute of frauds, is not an available defense to the seller, in this action. Under the evidence the assignment was an executed transaction which, from the

defendant's angle in the controversy, concerns the parties to that transaction alone.

"This defense is a personal one like the defense of infancy, the statute of limitations, usury and similar defenses." 49 Am. Jur., sec. 588, p. 896. It is, therefore, a matter *inter partes* to the transaction.

"The purpose of the statute is to prevent fraud upon individuals charged with participation in transactions coming within this purview and not upon the public at large." *Allison v. Steele,* 220 N.C. 318, 17 S.E. 2d 339. Moreover on cross-examination Blomberg was permitted to testify without objection that he signed the minutes of the meeting in which the assignment was completely set forth.

There is no question that such a contract is assignable and that it puts the seller under its stipulated obligations to the purchaser of the contract and entitles the assignees to specific performance. Bispham's Equity, 9th Ed., 592; *Casket Co. v. Wheeler,* 182 N.C. 459, 109 S.E. 378; G.S. 1-57.

The plaintiff's evidence, too, is sufficient to generate the inference that in the transaction Blomberg acted as the agent for the corporation, bought the property for it, "was buying for it all the time," and, if this is believed, the corporation would have the right to sue in its own name. "The right of a principal to maintain an action to enforce a contract made by his agent in his own name without disclosing the name of the principal is well settled." *Williams v. Honeycutt,* 176 N.C. 102, 96 S.E. 730; *Nicholson v. Dover,* 145 N.C. 18, 58 S.E. 444.

The contract sets out the manner in which the purchase price of $8,000 shall be paid, acknowledges the payment of $250 for execution and delivery of the contract and requires payment of the balance, one-half cash in one and two years, "additional cash to be paid upon delivery of deed, and the remaining to be secured by a first deed of trust to be given back on said lot supported by two notes of equal amount due and payable on or before one and two years after date of said deed of trust." The objection that such a contract necessarily imports that credit is given alone to the person with whom the transaction is personally carried out and that no other person or concern can be substituted for it because of the changes in the person to whom credit is given would, *ipso facto,* defeat the assignability of such a property right at the arbitrary pleasure of the seller. We think that unless adequately expressed in the instrument itself, or in some circumstance of judicially recognizable nature *dehors* the agreement, it cannot be raised as a defense. Nothing of the sort appears here; and since the contract calls for payment of half the purchase price in cash with balance secured on the premises, the suggestion seems pointless.

In this contract it does not appear that time was the essence of the agreement as it often is in a mere option. "It is agreed that settlement

under this contract shall be completed on or before November 20, A. D. 1945." The agreement itself is not worded to avoid the contract altogether or expressly vitiate it, if settlement is not made at that time.

However, if we concede it to be of the essence of the contract, the evidence of the plaintiff is still to be considered as to whether the plaintiff or the plaintiff's agent was prevented from complying with this provision through the non-co-operation of the seller, or whether, under the circumstances, its strict compliance had been waived; whether the inability to "settle," if it required tender in the strict sense, was not due to the fault of the defendant by rendering himself inaccessible in the first place, and later by his attorney, and presumably his agent, Mr. Pangle, who advised a later date would serve. 62 C.J., p. 657, sec. 5.

We cannot say that there are no inferences from the evidence which tend to support plaintiff's contentions. In withdrawing it from the jury there was error. The judgment of nonsuit is reversed.

Reversed.