C. EDWARD GILLESPIE, PLAINTIFF v. DAVID DeWITT, DEFENDANT AND THIRD-PARTY PLAINTIFF v. DANIEL E. KELLY AND K & G HEALTH CARE INDUSTRIES, INC., THIRD-PARTY DEFENDANTS

No. 808SC810

(Filed 4 August 1981)

1. **Guaranty § 1; Uniform Commercial Code § 28— guaranty agreement—no specified amount to be paid—no negotiable instrument**

    An agreement signed by defendant which guaranteed the payment of "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor . . . to the extent of $30,000" was not a negotiable instrument since it did not contain an unconditional promise to pay a sum certain but only established a ceiling on the amount of the guarantor's liability.

2. **Guaranty § 1— guaranty of payment**

    An agreement in which defendant guaranteed the full and prompt payment to a bank at maturity and all times thereafter "of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of $30,000" created a guaranty of payment.

3. **Guaranty § 1— guaranty of payment—consideration—future indebtedness**

    Although a guaranty of payment was independent of the transaction in which the principal debt was created, it was supported by consideration where it covered future as well as existing indebtedness.

4. **Guaranty § 2— assignment of notes and guaranty—liability of guarantor on notes**

    Plaintiff did not extinguish defendant's liability on a guaranty of payment of a corporation's notes to a bank by giving his personal note to the bank in return for the bank's assignment to him of the notes and the guaranty of payment where the language of the guaranty showed that it was the intention of the parties that the guaranty be assignable, and where the uncontraverted evidence showed that plaintiff purchased the corporation's notes to protect collateral he had put up as security for the notes and that it was the intention of plaintiff and the bank that the transaction be a purchase of the notes and guaranty rather than payment of the notes.

Gillespie v. DeWitt

**5. Corporations § 25; Principal and Agent § 6.1— agent's execution of note—ratification by corporation**

A corporation ratified its agent's appointment and authority to execute notes to a bank on its behalf by accepting the proceeds of the bank loans and making payments on the notes.

**6. Guaranty § 2— guaranty of payment—assignment to accommodated party—action against guarantor**

Although plaintiff was an accommodated party on a guaranty of payment of notes to a bank executed by defendant, the bank's assignment of the notes and guaranty agreement to plaintiff operated as a binding transfer of the title to the guaranty agreement as between the bank and plaintiff, and plaintiff succeeded to the rights of the bank against defendant under the guaranty agreement and could sue defendant to recover amounts owed by defendant under the agreement.

**7. Guaranty § 1— guaranty of payment—right to grant extensions of notes**

A guaranty stating that a bank was authorized to grant "extensions . . . with respect to any of the indebtedness, liabilities and obligations covered by this guaranty" was intended to give the bank the right to grant multiple extensions of any one of the principal debtor's notes to the bank or all of them without discharging defendant's liability as guarantor, and defendant waived any defense of discharge due to the extension of the notes by executing the guaranty containing such language.

**8. Guaranty § 2— notice to holder to proceed against principal—meaning of principal**

The statute which permits a guarantor to give written notice to the holder or owner of an obligation requiring him to use all reasonable diligence to recover against "the principal," G.S. 26-7(a), refers to the principal debtor on the indebtedness or obligations underlying the guaranty and not to a principal of the guaranty itself.

**9. Interest § 2— action on guaranty—interest on notes from maturity and after judgment**

Where a corporation's notes to a bank and defendant's guaranty of payment of the notes were assigned by the bank to plaintiff in return for plaintiff's payment of principal and interest due on the notes, defendant agreed in the guaranty to pay any indebtedness of the corporation to the bank, the notes specifically provided that interest should accrue on them at the rate of 9½% from maturity, and the trial court entered summary judgment for plaintiff in an action to recover upon defendant's guaranty of the notes, the trial court properly awarded plaintiff interest of 9½% from the time of maturity of the notes until the entry of summary judgment and the legal rate of interest of 6% from the time of entry of the judgment.

**10. Attorneys at Law § 7.4— attorney fee provision of note—notice of intention to enforce**

Plaintiff's notice to defendant of his intention to collect attorney's fees pursuant to the provisions of a note was timely although it was not received by defendant until four days after plaintiff's action on the note was initiated.

APPEAL by defendant, David DeWitt, from *Reid, Judge.* Judgment entered 3 July 1980 in Superior Court, WAYNE County. Heard in the Court of Appeals 11 March 1981.

On 22 December 1976, K & G Health Care Industries, Inc. (hereinafter K & G) executed a promissory note in the original principal amount of $16,000 to Peoples National Bank of Smithfield, North Carolina (hereinafter bank). Similarly, on 28 December 1976, K & G executed another promissory note to the bank in the original amount of $14,000. Both of these notes were signed for K & G by Daniel E. Kelly, third-party defendant. They were both endorsed on the back by plaintiff and Kelly. The notes were secured by collateral in the form of stocks and a debenture belonging to plaintiff. Both notes were renewed on several different occasions after their original date of maturity.

On 19 January 1977, defendant, who was a shareholder, officer, and director of K & G, executed a loan guaranty agreement with the bank. In this agreement defendant guaranteed the payment of K & G's indebtedness to the bank to the extent of $30,000.

K & G made payments on the two notes through 2 October 1978. At that time there remained outstanding a total principal balance on both notes of $20,673.11. No further payments were made by K & G after that date.

By letter dated 7 June 1979, defendant was notified by the bank that the notes had not been paid. Defendant responded by letter dated 19 June 1979 in which he informed the bank that he had signed the guaranty as guarantor of plaintiff and Kelly and as such he did not have an obligation to pay until the bank had exhausted all legal measures of obtaining payment against them.

In June or July 1979, the bank made demand on plaintiff for payment of the notes. On 7 September 1979, plaintiff paid to the bank the balance of the principal and interest due on the notes. Plaintiff borrowed $20,673.11 from the bank with which he paid the combined remaining principal balance on the original two notes. He paid the interest due on the two notes by personal check. At that time, both notes and defendant's guaranty agreement were assigned and delivered to plaintiff by the bank. Subsequently, and on 8 November 1979, plaintiff gave written notice of the bank's assignments to defendant.

Gillespie v. DeWitt

Plaintiff filed his complaint in this action on 6 December 1980, seeking to recover from defendant $22,317.11, representing the total amount plaintiff had paid the bank for the two notes with interest, plus interest on that amount from 7 September 1979, basing his claim upon the written guaranty of K & G's indebtedness which defendant had given the bank on 19 January 1977.

By his answer defendant admitted having executed the written guaranty and that he refused to pay under that agreement, but denied that the sums referred to in the guaranty were past due or unpaid. He averred in defense that his obligation on the notes had been discharged by payment of the notes or by reacquisition by a prior party, or by both. Furthermore, he averred that his obligation on the notes had been discharged by the holder's alterations of the terms of the notes without his consent, by failure of the holder to take appropriate action against the principal, K & G, and against the securities held for the obligation, and by the impairment of recourse and collateral for the notes without defendant's consent. Defendant also alleged as a first counterclaim and setoff that plaintiff, as an endorser of the notes, was liable for a proportionate share of any amount for which the sureties on the note were liable. As a second counterclaim, defendant alleged that plaintiff entered into an agreement with defendant and Daniel Kelly under which he was to be indemnified for any loss he suffered by virtue of the guaranty he executed for K & G's indebtedness, and that by the terms of that agreement plaintiff was liable to defendant for any amount recovered by plaintiff from defendant under the guaranty.

In response to a court order entered 14 May 1980, in which the court found the third-party defendants, Kelly and K & G, to be necessary parties pursuant to G.S. 1A-1, Rules 19 and 20, defendant filed on that day a third-party complaint against those parties.

On 25 May 1980, plaintiff made a motion for summary judgment pursuant to G.S. 1A-1, Rule 56. The court considered the pleadings, the depositions of plaintiff and J. Newton Thrash, Jr., the exhibits, the affidavit of Daniel E. Kelly, and the legal memoranda and arguments of counsel for plaintiff and defendant. On 3 July 1980, the court allowed plaintiff's motion and entered

its judgment in which it found that no genuine issue of material fact existed. The court ordered defendant to pay plaintiff $24,269.98, representing the amount owing on the notes plus interest, and to pay plaintiff's counsel $3,477.81 in attorney's fees pursuant to G.S. 6-21.2. Defendant appealed from the court's entry of summary judgment.

*Freeman, Edwards and Vinson, by George K. Freeman, Jr., for plaintiff appellee.*

*VanCamp, Gill and Crumpler, by James R. VanCamp and Douglas R. Gill, for defendant appellant.*

MORRIS, Chief Judge.

Defendant's sole assignment of error is to the trial court's granting plaintiff's motion for summary judgment. G.S. 1A-1, Rule 56(c) specifies that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." We need not review again the familiar standards for this motion. For a comprehensive summary of the law with respect to Rule 56 see Justice Moore's opinion in *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). It is for us to determine whether the evidence before the trial court created a factual issue that was so essential that the party against whom it was resolved should not prevail, or if a factual issue existed of such a nature as to affect the outcome of the action, or if a factual issue existed of such a nature as to constitute a legal defense. If none of these "situations" existed, the trial court's allowance of plaintiff's motion was correct and will be affirmed.

[1] Several of defendant's arguments rely on and refer in part to the rules of the Uniform Commercial Code, G.S. 25-1-101 *et seq.* Defendant's references to the U.C.C. are misplaced in this instance. The law of contracts rather than the U.C.C. properly governs the qualities and effects of this guaranty contract. G.S. 25-3-104 sets out the requisite elements which a writing must "possess" in order to be negotiable and, thus, come within the scope of the rules and regulations of the U.C.C. To be a negotiable instrument a writing must be signed by the maker or

drawer, contain an unconditional promise or order to pay a sum certain in money, contain no other promise, order, obligation or power given by the maker or drawer except as authorized by G.S. Chapter 25, Article 3, be payable on demand or at a definite time, and be payable to order or to bearer. G.S. 25-3-104. The guaranty contract before us for consideration in this case does not fulfill all of these statutory requirements.

In a recent case analogous to the one before us, *Trust Co. v. Creasy*, 301 N.C. 44, 269 S.E. 2d 117 (1980), the Supreme Court, per Justice Britt, held that a guaranty agreement substantially similar to that in the case *sub judice* was not a negotiable instrument. The Court based its determination in *Creasy* upon the absence from the contract of guaranty of two of the elements of negotiability required by G.S. 25-3-104. The Court held that the guaranty agreement did not meet the requirement that it delineate "a sum certain in money." This was so because the document in question in *Creasy* called for a ceiling of $35,000 on the amount of the prinicipal debtor's indebtedness on which the guarantor agreed to be liable. The guaranty agreement did not specify the actual amount of liability within itself. Resort had to be made to external sources of information to determine the extent of the guarantor's actual liability. Justice Britt stated:

> For the requirement of a sum certain to be met, it is necessary that at the time of payment the holder is able to determine the amount which is then payable from the instrument itself, with any necessary computation, without any reference to an outside source. Official Comment, G.S. § 25-3-106 (1965); *Wattles v. Agelastos*, 27 Mich. App. 624, 183 N.W. 2d 906 (1970). It is necessary for a negotiable instrument to bear a definite sum so that subsequent holders may take and transfer the instrument without having to plumb the intricacies of the instrument's background. *Cobb Bank & Trust Co. v. American Mfr's. Mut. Ins. Co.*, 459 F. Supp. 328 (N.D. Ga. 1978). . . .
>
> Such an absence is enough by itself to foreclose any finding that the paper at issue is negotiable.

301 N.C. at 51, 269 S.E. 2d at 122. The guaranty agreement now before us resembles the document in *Creasy*. It is an instrument separate from any specific note, obligation or instrument which

evidences the principal debtor's indebtedness. It was not executed simultaneously with or attached to any such instrument. Nor does it refer to any specific instrument which evidences an obligation of the principal debtor. The guaranty agreement guarantees the payment of "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor . . . to the extent of $30,000." The guaranty does not specify the amount of liability that is to be paid. It only establishes a ceiling on the amount of the guarantor's liability.

For the reasons stated in *Creasy*, this instrument does not supply the requisite certainty in the amount or sum due. Therefore, it is not a negotiable instrument.

[2] The parties to this lawsuit do not contend that this instrument represents any form of agreement other than a contract of guaranty. The document is labeled "Loan Guaranty Agreement". However, labels are not necessarily binding. The substance of the transaction controls. *Thompson v. Soles*, 299 N.C. 484, 263 S.E. 2d 599 (1980); *In Re Will of Pendergrass*, 251 N.C. 737, 112 S.E. 2d 562 (1960).

> A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself liable in the first instance for such payment or performance. *Cowan v. Roberts*, 134 N.C. 415, 46 S.E. 979 (1904).

*O'Grady v. Bank*, 296 N.C. 212, 220, 250 S.E. 2d 587, 593 (1978). A guarantor's liability arises at the time of the default of the principal debtor on the obligation or obligations which the guaranty covers. *Milling Co. v. Wallace*, 242 N.C. 686, 89 S.E. 2d 413 (1955); *Trust Co. v. Clifton*, 203 N.C. 483, 166 S.E. 334 (1932). A guaranty of payment is an absolute promise by the guarantor to pay a debt at maturity if it is not paid by the principal debtor. This obligation is independent of the obligation of the principal debtor, "and the creditor's cause of action against the guarantor ripens immediately upon the failure of the principal debtor to pay the debt at maturity." *Investment Properties v. Norburn*, 281 N.C. 191, 195, 188 S.E. 2d 342, 345 (1972). The language of the agreement signed by defendant created an unconditional promise on defendant's part to pay the bank any sums due on the principal debtor's

(K & G's) indebtedness at maturity if not paid by the principal debtor. The guaranty agreement provides:

> We hereby jointly and severally guarantee the full and prompt payment to said Bank at maturity, and at all times thereafter, and also at the time hereinafter provided, of any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced, to the extent of $30,000.

This language was sufficient to create a guaranty of payment.

The enforceability of the guarantor's promise is determined primarily by the law of contracts. However, a special law of guaranty has developed to answer specific problems inherent in guaranty agreements. *O'Grady v. Bank*, supra.

[3] Initially, we are confronted with the question of the validity of defendant's guaranty contract. Defendant contends that this guaranty contract was not based upon any consideration. "It is well-settled law in this State that in order for a contract to be enforceable it must be supported by consideration." *Investment Properties v. Norburn*, supra, at 195, 188 S.E. 2d at 345, and cases cited therein. It is unnecessary that the consideration be full or adequate. Any legal consideration will be sufficient to support the guaranty. *Cowan v. Roberts*, 134 N.C. 415, 46 S.E. 979 (1904).

Defendant suggests that the testimony of the bank officer, J. Newton Thrash, Jr., who administered the notes and guaranty in question created an issue as to whether the guaranty was entirely gratuitous or based upon consideration. The essence of Mr. Thrash's testimony was that defendant wanted to guarantee the two notes which were collateralized by plaintiff's securities and debenture so that plaintiff would not lose his collateral or have to pay the notes. This was being done so that defendant and third-party defendant Kelly could persuade plaintiff to sell them his interest in K & G. Mr. Thrash testified that, "the guaranty itself did not enter into the original decision to loan the money, because the loan was made prior to the guaranty being executed." He also stated: "I am of the opinion that the bank did not require that

guaranty for any purpose in connection with these notes. We obviously were holding collateral sufficient to cover both of these notes, and Dr. DeWitt's guaranty really didn't add anything to our positon at that point."

The guaranty contract was between defendant-guarantor and the bank-obligee. Consideration for this contract passed between these two parties and not between the guarantor and some third-party, here plaintiff. Mr. Thrash's testimony indicates that his bank did not solicit or need the extra security for these two notes. The reason defendant executed this guaranty was to procure plaintiff's ownership interest in K & G.

When the guaranty contract is shown to have been executed as a part of a transaction which created the guaranteed debt, it is not essential to recovery on the guaranty that the guaranty shall have been supported by consideration other than the principal debt. 38 Am. Jr. 2d, Guaranty, § 44, p. 1047. The extension of credit by the obligee under the guaranty contract supplies consideration for both the principal debt and the guaranty. Here the guaranty was not entered into as part of the transaction which included the creation of the principal debt. This guaranty was executed after the original debt was incurred, and there is no evidence that it was part of the agreement in which the principal debt was incurred. When the guaranty is independent of the transaction in which the principal debt was created, it should be supported by consideration which is independent of the principal debt. 38 Am. Jur. 2d, Guaranty, § 45, pp. 1047-48.

Going no further, it would seem that defendant's contentions were correct and that the subsequent guaranty contract was not supported by independent consideration running from the obligee to the guarantor. However, when the guaranty which is separate from the original indebtedness covers *future* as well as existing indebtedness, there is consideration for the guaranty apart from the principal indebtedness which was previously in existence. *See, Gibbs v. American National Bank of Jacksonville,* 155 So. 2d 651 (1963), *cert. discharged,* 170 So. 2d 821 (1964) and cases cited therein. By agreeing to guarantee future advances of credit the guarantor exposed himself to liability on indebtedness which the principal debtor might possibly incur in the future to the extent of the $30,000 limit. The guaranty contract executed by defendant

stated that defendant guaranteed, "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank, and every balance and part thereof, whether now owing or due, *or which may hereafter, from time to time, be owing or due, and howsoever heretofore or hereafter created or arising or evidenced. . .*" (Emphasis added.) Therefore, in this instance this guaranty contract was based upon consideration in the form of the guarantor's agreement to pay upon maturity and upon the principal debtor's default on any indebtedness, liability or obligation extended by the bank to the principal debtor in the future. The guaranty agreement is clear on this point and there is no issue of fact.

No other issues relative to the formation of a valid contract of guaranty were raised in the pretrial proceedings or on appeal. After examining the record and attached exhibits, we are not aware of any issue as to the remaining elements necessary to the existence of a valid contract. Therefore, we now turn to the procedural and interpretive aspects of the proper enforcement of this contract.

[4] Defendant argues for several reasons that this guaranty is not enforceable by plaintiff to whom it and the notes were assigned. First, defendant argues that the "obligations under the guaranty is [sic] conditioned upon nonpayment of a note covered by a guaranty, but uncontroverted facts do not establish that the condition precedent of nonpayment of such a note has occurred." Defendant contends that plaintiff, by giving his personal note in return for the bank's assignment of the K & G notes and guaranty to him, paid off the notes and in so doing extinguished his liability on the guaranty. Defendant insists that his theory gives rise to a question of fact as to whether the K & G notes were paid or whether they were merely purchased by plaintiff.

We disagree. There was no factual issue as to whether plaintiff purchased or paid the notes by giving the bank his own personal note in return for the assignment to him of the K & G notes and defendant's guaranty. The uncontroverted evidence shows that plaintiff purchased the K & G notes to protect his collateral which he had put up as security for the K & G notes. He had no intention to extinguish them.

The bank's assignment of the K & G notes and defendant's guaranty to plaintiff was valid. The rights of the obligee to a guaranty contract may be assigned under the principles of general contract law. 3 Williston, Contracts 3d ed. § 404 *et seq.* The guaranty agreement in the case *sub judice* provides:

> This guaranty shall be binding upon the undersigned jointly and severally, and upon the heirs, legal representatives and *assigns* of the undersigned, and each of them, respectively, and shall inure to the benefit of said Bank, its successors, legal representatives and *assigns.* (Emphasis added.)

This language reveals that it was the intention of the parties to this guaranty that it be assignable. This clearly negates any issue as to whether the guaranty was originally agreed to on the basis of the guarantor's personal confidence in the obligee which would indicate that the guaranty was not intended to be assignable.

An assignment operates as a valid transfer of the title of a chose in action. *Lipe v. Bank,* 236 N.C. 328, 72 S.E. 2d 759 (1952). The assignee becomes the real party in interest who may maintain an action thereon in his own name. *Overton v. Tarkington,* 249 N.C. 340, 106 S.E. 2d 717 (1959); *Cadillac-Pontiac Co. v. Norburn,* 230 N.C. 23, 51 S.E. 2d 916 (1949). The assignee acquires such right, title and interest as the assignor had. *Cf. Holloway v. Bank,* 211 N.C. 227, 189 S.E. 789 (1937). Therefore, in the instant case plaintiff as the assignee of the guaranty took title to that contract. He acquired the rights, title and interest to the guaranty and may maintain an action thereon in his own name.

The evidence shows that plaintiff intended to purchase the notes when he took assignment of them. The uncontradicted evidence shows that plaintiff was forced to give the bank his personal note and take assignment of the K & G notes and of defendant's guaranty in return. Plaintiff had to do this to protect the collateral, which was his own personal property, he had put up to secure K & G's debt. It is clear from the evidence that had plaintiff not purchased the notes the bank would have resorted to his collateral for payment. At this time plaintiff no longer had any interest in K & G, and he did not take assignment of these notes to aid the company. Furthermore, the assignment itself is substantial evidence that it was the intention of the parties that plaintiff purchase the notes rather than extinguish them. Had it been their

intention merely to extinguish the notes they would have simply cancelled the documents or destroyed them. Instead the uncancelled notes were endorsed by the bank's representative and given to plaintiff. The parties executed a written assignment of the guaranty agreement and the indebtedness covered thereby to plaintiff. The assignment provides that the bank "does hereby sell, assign, transfer and set over unto C. Edward Gillespie this guaranty and any and all choses in action and right of suit and collections thereon." This language indicates that it was the parties' intention that the transaction be a purchase of the notes and guaranty by plaintiff rather than payment.

Defendant contends that the transfer of the notes and assignment of the guaranty are not conclusive of the fact that the transaction constituted a sale rather than payment of the notes. In support of this argument defendant relies on *Insurance Co. v. McCraw*, 215 N.C. 105, 1 S.E. 2d 369 (1939), in which the Supreme Court stated:

> Whether a stranger to a note, who takes it up, buys it or extinguishes it, depends, ordinarily, on the circumstances surrounding the transaction. *Wilcoxon v. Logan*, 91 N.C., 449.

215 N.C. at 108, 1 S.E 2d at 371. This rule of law is certainly still valid. However, where all of the evidence before the court on the motion for summary judgment indicated that the parties' intent was that the notes and guaranty were being purchased rather than paid, there could be but one conclusion. Thus, there was no issue of fact. We find no evidence in the record to contradict that which shows the transaction to have been a purchase and assignment of the notes and guaranty. Therefore, we conclude that this transaction was a purchase and assignment of the notes and guaranty by and to plaintiff.

[5] Defendant argues that the written guaranty contract on which plaintiff bases this action covered only the indebtedness or obligations of K & G to the bank, but that uncontroverted evidence did not establish that the unpaid notes were those of K & G. He bases this contention on what he claims to be an issue of fact as to whether the notes were properly executed by third-party defendant Daniel E. Kelly for K & G. Defendant asserts that there was also a question as to whether Kelly was authorized to sign the notes as agent of K & G.

The notes were signed:

K & G Health Care Industries, Inc.
By, Daniel E. Kelly              (Seal).

Where there is plenary evidence that the principal ratified the contract of its agent, objection to the admission of evidence of the contract on the ground that the authority of the agent to make the contract had not been shown, is untenable. *Turner v. Chevrolet Co.*, 209 N.C. 587, 183 S.E. 742 (1936), *see also Investment Properties v. Allen*, 283 N.C. 277, 196 S.E. 2d 262 (1973). "The appointment of an agent and the scope of his authority may be established by conduct as well as by words of the principal. (Citation omitted.)" *Investment Properties v. Allen*, 13 N.C. App. 406, 408, 185 S.E. 2d 711, 713 (1972), *reversed on other grounds*, 283 N.C. 277, 196 S.E. 2d 262 (1973). In this instance the uncontroverted evidence of the conduct of the principal, K & G, established that the principal ratified both the appointment and the authorization of the purported agent, Kelly, to execute these notes on K & G's behalf. The evidence shows that for over a year the principal, K & G, made payment of the principal and interest due on the notes, substantially reducing the amount due on them. Since there was no evidence produced to indicate otherwise, we think that this was ample evidence from which the court could conclude without question that the principal, K & G, had ratified both the fact of Kelly's agency relationship and the extent of his authority to act on its behalf in this matter. The principal, K & G, ratified and accepted its liability on these notes by accepting the benefits of the loan and making payments on its indebtedness. We conclude that there was no issue of fact as to the principal's, K & G's, liability on these notes. Therefore, the indebtedness on these notes was covered by the guaranty agreement between defendant and the bank.

[6]    Defendant assigns error to what he terms the failure of "uncontroverted evidence . . . to establish an unusual situation in which an endorser who acquires a note by payment has recourse against a subsequent guarantor." Defendant insists that there was a material factual issue as to the reason that he executed this guaranty. He contends that his reason for executing the guaranty was material due to what he calls the "well-established principle that an accommodation party cannot be liable to the party accom-

modated." Defendant alleges that he presented materials for the court's consideration which tended to show that his guaranty was an accommodation of K & G, of Kelly, and of plaintiff. Thus, he reasons that by executing the guaranty upon which plaintiff was an endorser he accommodated plaintiff. Specifically, he argues that an endorser who acquires a note by payment does not have recourse against a subsequent guarantor. Therefore, plaintiff, one of the parties accommodated, may not now turn and sue defendant, the accommodation party. Defendant insists that this rule makes material the issue of whether by signing the guaranty he accommodated plaintiff.

We disagree. It is a general rule that an accommodation party is not liable to the party accommodated. 11 Am. Jur. 2d, Bills and Notes, § 546, p. 609; *see Bank v. Hinton,* 216 N.C. 159, 4 S.E. 2d 332 (1939). However, in view of the facts of this case, it is immaterial whether plaintiff was one of the accommodated parties. Defendant does not contend, and the undisputed facts reveal, that the bank was not the party accommodated by the guaranty agreement. The guaranty was executed by defendant ostensibly to guarantee the payment of K & G's obligations and indebtednesses to the bank. It is elementary that the bank could proceed to enforce the guaranty agreement upon K & G's default on the payments of its indebtedness to the bank and force defendant to pay those debts. It has already been established that the guaranty agreement was properly assigned by the bank to plaintiff. The assignment operated as a binding transfer of the title to the guaranty agreement as between the bank and plaintiff. *See Lipe v. Bank,* 236 N.C. 328, 72 S.E. 2d 759 (1952). The assignee of a nonnegotiable instrument such as this guaranty acquires the rights possessed by the assignor, and stands in the shoes of the latter. 6 Am. Jur. 2d, Assignments, § 102, p. 282. By taking the assignment of the guaranty agreement from the bank, plaintiff succeeded to the rights of the bank against defendant under the guaranty agreement. Plaintiff, as assignee of the guaranty, may sue the defendant-guarantor to recover the amounts owing by defendant under the agreement. Thus, the question of defendant's reason for executing the guaranty becomes immaterial. This assignment of error is overruled.

[7] Defendant claims that there are material questions as to whether he has been discharged from liability under the guaranty

by the acts or omissions of the holder of the guaranty. First, defendant argues that there was an issue as to whether he had available to him the defense of being discharged from liability on the guaranty, because the time of maturity of the two notes upon which this action is based had been extended several times. We do not think that there was any issue of fact as to the unavailability of the defense of discharge due to the extension of the notes to defendant. The guaranty contract expressly states:

> Authority and consent are hereby expressly given said Bank from time to time, and without any notice to the undersigned, to give and make such *extensions*, renewals, indulgences, settlements and compromises as it may deem proper with respect to any of the indebtedness, liabilities and obligations covered by this guaranty, including the taking or releasing of security and surrendering of documents. (Emphasis added.)

By executing the guaranty containing this language defendant clearly waived any defense of discharge due to the extension of the notes. However, defendant claims that the parties' intention as to the meaning to be given the word "extensions" is ambiguous. He contends: "The use of that word could be interpreted to mean that the bank could grant more than one extension by extending several notes or other indebtedness one time each. It also could be interpreted to mean that the bank could grant multiple extensions of each separate indebtedness." Only the latter interpretation would justify the bank in having extended the two notes several times each.

The construction of a contract is a matter of law for the courts when the language is plain and unambiguous. *Kent Corporation v. Winston-Salem*, 272 N.C. 395, 158 S.E. 2d 563 (1968); *Rhoades v. Rhoades*, 44 N.C. App. 43, 260 S.E. 2d 151 (1979). We think the language of the guaranty is unambiguous with respect to the interpretation which the parties intended to give the word "extensions". The guaranty states that the bank is authorized to grant "extensions . . . with respect to any of the indebtedness, liabilities and obligations covered by this guaranty." The word "extensions" must be read in context with this immediately succeeding language. It becomes obvious from this language that the parties' intention was that the bank could grant multiple exten-

sions of any one of K & G's obligations or of all of them without discharging defendant's liability as guarantor.

[8]   Second, defendant contends that the evidence does not conclusively establish that the bank properly proceeded against all of the obligors on the notes in response to defendant-guarantor's notice to the bank to proceed against the obligors. Defendant asserts that under G.S. 26-7 a guarantor may "demand that the holder of a note use reasonable diligence first to recover against previous obligors and to proceed to realize upon securities he holds for the obligation." Defendant insists that there is a factual issue as to who the principals of the guaranty agreement were. Defendant reasons that this issue was material, because without a determination of who the principles to the guaranty were, it cannot be determined whether the defendant's notice in fact informed the bank to proceed against the principals. Thus, defendant argues there is an issue as to whether he was discharged on his guaranty by failure of the bank to proceed in response to the notice given.

G.S. 26-7(a) provides:

After any note, bill, bond, or other obligation becomes due and payable, any surety, indorser, or guarantor thereof may give written notice to the holder or owner of the obligation requiring him to use all reasonable diligence to recover against the principal and to proceed to realize upon any securities which he holds for the obligation.

There was no factual dispute as to which party in this case represented the party designated in the statute as the "principal". Obviously, when the statute refers to the "principal" it refers to the principal debtor on the obligation being enforced, here K & G. Defendant argues that the evidence suggests the possibility of finding that K & G, Kelly, plaintiff, or a combination of them were the "principals of the defendant's guaranty". G.S. 26-7 does not refer to the "principal of the . . . guaranty" as defendant suggests, but rather it clearly refers to the principal debtor on the indebtedness or obligations underlying the guaranty. Therefore, in this case K & G was the principal to which the statute refers.

Finally, defendant assigns error to the portion of the court's judgment in which it awarded interest and attorney's fees to plaintiff.

**[9]**   First, defendant maintains that the court erred in awarding plaintiff interest at the rate of "9%" from the time plaintiff acquired the notes until the time of the rendering of summary judgment for plaintiff. Defendant claims instead that the court properly should have awarded interest under G.S. 24-5 at the legal rate of 6% as specified in G.S. 24-1 during this period. We disagree. The court ordered defendant to pay plaintiff interest at the approximate rate of 9% from the time of the default until the date of the entry of judgment and thereafter interest was to be accumulated at the "legal rate", meaning the 6% rate specified in G.S. 24-1. Defendant agreed in the guaranty to be liable for "any and all indebtedness, liabilities and obligations of every nature and kind of said Debtor to said Bank." Both of the notes in question state:

Interest shall be computed on the basis of a 60 day year for the actual number of days in the interest period and interest shall accrue after maturity or demand, until paid, at the rate stated.

The interest rate stated in the note was 9½% per annum. By the language of the guaranty defendant contracted to pay any indebtedness, no matter its origin, of K & G to the bank. The notes specifically state that interest should accrue on them at the rate of 9½% from maturity. Hence, defendant guaranteed to the bank payment of interest on the notes at the rate of 9½% from the date of their maturity. This is what the court ordered. As the purchaser of the notes and assignee of the notes and guaranty plaintiff acquired the rights, title and interest thereto possessed by the bank-assignor. *See Holloway v. Bank,* 211 N.C. 227, 189 S.E. 789 (1937). This would include the right to interest on the amount due on the notes from maturity at the rate of 9½%. Thus, the court's award of interest at this rate was correct. G.S. 24-5 requires that "the principal sum due on all . . . contracts shall bear interest from the time of rendering judgment thereon until it is paid and satisfied." The statute supports the validity of the court's award of interest to plaintiff at the "legal rate" from the time of the entry of judgment.

**Gillespie v. DeWitt**

[10] Second, defendant insists that the court erred by ordering him to pay plaintiff's counsel attorney's fees in the sum of $3,477.81. Defendant takes the position that this was erroneous because he received improper notice of intent to collect attorney's fees as required by G.S. 6-21.2. Defendant maintains that he did not receive notice of plaintiff's intention to demand attorney's fees until well after this action was filed and that this untimely notice was in conflict with the policy of the statute.

G.S. 6-21.2(5) requires the holder of a note to notify the maker or party sought to be held on the obligation that the provisions of the obligation relative to attorney's fees shall be enforced. Such notice should be given "after maturity of the obligation by default or otherwise." This Court has held in the past that G.S. 6-21.2(5) sets no time limit on the giving of the required notice. *Trust Co. v. Larson,* 22 N.C. App. 371, 206 S.E. 2d 775, *cert. denied,* 286 N.C. 214, 209 S.E. 2d 315 (1974); *see Binning's, Inc. v. Construction Co.,* 9 N.C. App. 569, 177 S.E. 2d 1 (1970). Therefore, we hold that plaintiff's notice to defendant of his intention to collect attorney's fees was proper despite the fact that it was not received by defendant until four days after the action was initiated.

We have carefully examined the record in this case and have found no material issues of fact with regard to any of the questions raised by defendant or with regard to any of the salient aspects of defendant's liability on the obligations of K & G under the written guaranty. Plaintiff did establish by credible and uncontroverted evidence, for the most part in the form of documents, all of the facts necessary to entitle him to judgment against defendant. Therefore, the court's entry of summary judgment for plaintiff and its orders with regard to payments to be made by defendant thereunder is

Affirmed.

Judges MARTIN (Robert M.) and WHICHARD concur.