**E.J. FOURTICQ, Appellant,**

v.

**FIREMAN'S FUND INSURANCE COMPANY, et al., Appellee.**

No. 05–83–00201–CV.

Court of Appeals of Texas, Dallas.

June 8, 1984.

Lester R. Buzbee, III, Houston, for appellant.

John D. Gilliland, Baldwin, Gilliland & Jones, Dallas, for appellee.

Before AKIN, SPARLING and SHUMPERT, JJ.

SHUMPERT, Justice.

This is an appeal from an action for breach of contract. Appellant Fourticq contends that there was no consideration supporting the contract, and therefore, that there could be no breach because the contract was unenforceable. We agree. Consequently, we reverse and render a take nothing judgment for Fourticq. Additionally, we remand for a determination of attorney's fees.

In 1974, appellees Fireman's Fund, et al., entered into an agreement under which ADS Insurance Services became their agent for selling insurance. At that time, Fourticq, who had an ownership interest in ADS, signed an agreement indemnifying Fireman's Fund for any losses it might incur due to ADS's failure to pay insurance premium balances due Fireman's Fund under the agency agreement. Because of operational problems, ADS underwent a restructuring. Fourticq sold his share of ADS to Union General, the new company which emerged from ADS. Union General then became licensed to do business on June 24, 1975, and on that same day, Fireman's Fund entered into an agency agreement with Union General whereby Union General took over the agency position previously held by ADS. That agency agreement makes no reference to any indemnity agreement. On July 1, 1975, pursuant to a provision in the agency agreement providing that Fireman's Fund could terminate the agreement by giving Union General ninety days notice, Fireman's Fund terminated the agency agreement effective October 3, 1975.

On July 29, 1975, Fourticq, who had no ownership interest in Union General but was still owed money for his share of ADS, signed an agreement under which he indemnified Fireman's Fund for unpaid balances due it from Union General under the June 24, 1975, agency agreement. At the

time of execution of this guaranty, Fourticq did not know that the agency agreement between Fireman's Fund and Union General had already been cancelled. The indemnity agreement stated that it was signed in return for Fireman's Fund entering into an agency relationship with Union General and that it was a continuing relationship.

Fireman's Fund sued Fourticq under the July 29, 1975, guaranty and Union General under the agency agreement. The court directed a verdict awarding Fireman's Fund $3,528.39 in damages, $1,339.82 in interest, and $12,000 in attorney's fees from Fourticq and Union General, jointly and severally. The court also awarded Fireman's Fund $38,104.81 in damages and $14,469.39 in interest from Union General, individually. Union General did not appeal.

### Want of Consideration

Fourticq contends that there was no consideration supporting the execution of the indemnity agreement and that he cannot be liable for its breach because it was unenforceable. We agree. A guaranty agreement is a species of indemnity contract, i.e., the promisor agrees to be responsible for the performance of another even when he does not have direct control. *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 880 (Tex.1976) (dissent by Steakley, J.); *Harqis v. Radio Corporation of America, Electronic Components*, 539 S.W.2d 230 (Tex.Civ.App.—Austin 1976, no writ). It is elementary that every contract must be supported by consideration. *Moore and Moore Drilling Co. v. White*, 345 S.W.2d 550 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.). If the promise of the guarantor is made contemporary to the promise of the primary debtor, the consideration which supports the primary debtor's promise also supports that of the guarantor. If, however, a contract of guaranty is entered into independently of the transaction which created the primary debt or obligation, the guarantor's promise must be supported by consideration distinct from that of the primary debt. *Bohart v.*

*Universal Metals & Machinery, Inc.*, 523 S.W.2d 279 (Tex.Civ.App.—Dallas 1975), *rev'd on other grounds*, 539 S.W.2d 874 (Tex.1976). Consideration for a guaranty agreement usually consists of either the sufferance of a detriment by the creditor or a benefit conferred on the primary debtor. *McWhorter v. First State Bank of Wylie*, 11 S.W.2d 808 (Tex.Civ.App.—Dallas 1928, writ ref'd).

We hold that there was no consideration supporting Fourticq's execution of the July 29, 1975, indemnity agreement because neither Fourticq nor Union General received any benefit, and Firemen's Fund did not relinquish anything or suffer any detriment, as a result of its execution. Under the terms of the June 24, 1975, agency agreement and the July 1, 1975, cancellation notice, Fireman's Fund had certain obligations to Union General that continued until October 3, 1975. There is no evidence that the indemnity agreement altered any parties' rights under the June 24, 1975, agency agreement, except that upon signing the indemnity agreement, Fourticq had to indemnify Fireman's Fund if Union General did not meet its obligations to Fireman's Fund under the agency agreement. In short, Fireman's Fund was bound to perform under the terms of the agency agreement until October 3, 1975, and the signing of the indemnity agreement did not and could not affect that obligation.

Fireman's Fund argues that it suffered a detriment in signing the indemnity agreement because by doing so it was forced to relinquish certain rights it held pursuant to the agency agreement. Specifically, Fireman's Fund cites paragraph VI(a) of the agency agreement which provides:

(a) Agent's records and use and control of expirations shall remain Agent's absolute property and be left in his undisputed possession; provided, however, in the event of termination of this Agreement, if Agent has not properly accounted for and paid all premiums for which he is liable, Agent's records shall become the property of Company and Company shall have sole right to use and control such

expirations to the extent of Agent's total indebtedness to Company, *unless Agent provides other security acceptable to Company.* Honest difference of opinion over balances owed shall not constitute failure to pay. (emphasis added)

Fireman's Fund contends that the indemnity agreement was the "security acceptable to Company" and that because of the execution of the indemnity agreement, it relinquished the right to seize Union General's records pursuant to the agency agreement. We disagree. There is no evidence that the indemnity agreement constituted the "security acceptable to the Company" mentioned in the agency agreement. Consequently, Fireman's Fund did not relinquish rights pursuant to the agency agreement when it signed the indemnity agreement.

Fireman's Fund next argues that consideration existed because Fourticq expected to benefit from signing the indemnity agreement. Fireman's Fund contends that Fourticq knew that the only source of income by which to generate the $30,000 he was owed for his share in ADS was through policies issued by Fireman's Fund through Union General and that Fireman's Fund would not have signed the agency agreement without the indemnity agreement. We disagree. The agency agreement between Fireman's Fund and Union General was executed and cancelled before the indemnity agreement was signed. The agency agreement makes no reference to an indemnity agreement, and there is no evidence that Fireman's Fund would not have entered into the agency agreement without the indemnity agreement.

Fireman's Fund also contends that consideration existed because the indemnity agreement was of a continuing nature and because the agency agreement between it and Union General remained in full force and effect well beyond the time the indemnity agreement was signed. Citing *Gillespie v. Dewitt*, 53 N.C.App. 252, 280 S.E.2d 736 (1981), Fireman's Fund contends, that although independent consideration is usually required to support an indemnity agreement executed separately and subsequent to the incurring of the primary indebtedness, none is required when the guaranty covers *future* as well as existing indebtedness. The argument is that consideration for the guaranty, in the form of benefit to the debtor, flows from the creditor to the primary debtor each time a future indebtedness, guaranteed by the guarantor, is incurred. *See also Hargis*, 539 S.W.2d at 232.

We disagree that that principle applies here. In *Gillespie*, future loans were guaranteed, and in *Hargis*, an open account for purchasing merchandise was guaranteed. This case is distinguishable from *Gillespie* and *Hargis* because under the language of this indemnity agreement, Fourticq did not guarantee indebtedness for which Union General was not already liable as did the guarantors in *Gillespie* and *Hargis*. No new benefit, therefore, could later flow to Union General or Fourticq under the terms of the indemnity agreement sued upon.

Often, as in *Gillespie* and *Hargis*, the execution of a guaranty of indebtedness, not already guaranteed, provides additional incentive for a creditor to do business with the primary debtor. That cannot occur under this indemnity agreement because Fourticq only guaranteed indebtedness incurred under the June 24, 1975, agency agreement and not indebtedness incurred under future contracts.

■ Further, we are not persuaded by Fireman's Fund's argument that the indebtedness to be incurred when policies were sold during the term of the contract, after the execution of the indemnity agreement, constituted future indebtedness under *Gillespie* and *Hargis*. This subsequent indebtedness was not future indebtedness similar to that in *Gillespie* and *Hargis* because the indebtedness here was already contracted for under the agency agreement. We hold that for future indebtedness to constitute consideration in a situation in which a guaranty is signed separately and subsequent to the incurring of the primary indebtedness, the future indebtedness must be indebtedness not previously contracted for by the parties.

Fireman's Fund next contends, that in entering into the indemnity agreement, it suffered a detriment concerning its right to terminate the agency agreement. It argues that before entering into the indemnity agreement it was not required to give notice of termination to Union General that it was afterwards required to give. There is no evidence in the record supporting this contention.

■ Fireman's Fund also contends that consideration existed by virtue of the recitation that the indemnity agreement was signed "for and in consideration of Fireman's Fund entering into such Agency Agreement." We disagree. Although it is true that a written instrument reciting a consideration imports one, *Williams v. Hill*, 396 S.W.2d 911 (Tex.Civ.App.—Dallas 1965, no writ), Fourticq has rebutted that presumption by competent evidence. *Williams*, 396 S.W.2d at 913. The evidence shows that Fireman's Fund suffered no detriment, and neither Fourticq nor Union General received a benefit by virtue of the execution of the indemnity agreement. *See Russell v. Texas Consolidated Oils*, 120 F.Supp. 508 (D.C.N.M.1954). Fourticq's points of error with respect to lack of consideration are sustained.

### Attorney's Fees

■ Fourticq also contends that he is entitled to attorney's fees of $12,000. He pleaded for reasonable attorney's fees but did not contend that he was entitled to them under the terms of the indemnity agreement or TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984). There is evidence in the record, however, that a stipulation regarding attorney's fees was entered into between the parties. That part of the record states as follows:

THE COURT: All right, sir. Now, as also there was a stipulation in chambers and my understanding of the stipulation was that if plaintiffs or defendant were entitled to recover attorney's fees which is not stipulated, but if one or the other were found to be entitled to recover attorney's fees a reasonable fee for either the plaintiffs or the defendant would be twelve thousand dollars; is that correct?

COUNSEL FOR FOURTICQ: Yes, Your Honor. I think we stipulated that the winning party would receive attorney's fees of twelve thousand dollars.

COUNSEL FOR FIREMAN'S FUND: That's essentially.

Stipulations between parties amount to a contract between the parties, and they are subject to judicial interpretation and construction. *Hoffman v. Deck Masters*, 662 S.W.2d 438, 441 (Tex.App.—Corpus Christi 1983, no writ); *Amoco Production Co. v. Texas Electric Service Co.*, 614 S.W.2d 194 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). The question, then, is whether Fourticq is entitled to attorney's fees under the terms of this stipulation.

■ We are unsure of the terms of the stipulation. The trial judge speaks of whether one party is entitled to attorney's fees, while one lawyer states that the winning party was to receive attorney's fees. These two statements do not necessarily mandate the same result. We remand this part of the case, therefore, for a determination of the terms of the stipulation and an award of attorney's fees, if appropriate under the stipulation, in light of the disposition of the appeal. Costs are taxed to Fireman's Fund.

Reversed and rendered in part and remanded in part.