**BOY SCOUTS OF AMERICA,**
Appellant,

v.

**RESPONSIVE TERMINAL SYSTEMS,**
**INC., Appellee.**

No. 05–86–00936–CV.

Court of Appeals of Texas,
Dallas.

April 30, 1990.

Rehearing Denied June 18, 1990.

John H. Martin, Madeleine B. Johnson, for appellant.

Randall Yazbeck, Thomas Sterling Burke, John M. Weaver, Michael W. Huddleston, Dallas, for appellee.

Before HOWELL, THOMAS and BURNETT, JJ.

## OPINION ON REMAND

THOMAS, Justice.

This lawsuit involves a business relationship between Boy Scouts of America (BSA) and Responsive Terminal Systems, Inc. (RTS). Nearly every aspect of that relationship appears to have been in dispute at the trial court level, and the evidence from both sides is inconclusive as to the true understanding between the entities, if, in fact, they ever had a basic consensus regarding their business dealings. Since we hold that the trial court erred in finding BSA liable under RTS's promissory estoppel and breach of contract claims, we reverse and remand this cause, in part, for a new trial. As to BSA's award of damages for overcharges made by RTS to BSA and local Boy Scout councils, we affirm the recovery of overcharges made directly to BSA. We reverse the trial court's judgment with regard to BSA's recovery of damages on behalf of the local councils, and render in favor of RTS on that point. We further reverse and render as to BSA's award of attorney's fees.

In 1979, BSA, the National Council of the Boy Scouts organization, moved its headquarters to Irving, Texas. In addition to this national office, there are over 400 separately incorporated local Boy Scout councils throughout the United States. Shortly after moving to Irving, BSA became interested in computerizing many of its tasks, including its communications with local councils, and began working with RTS toward those ends. In November of 1982, the two entities signed an Agreement of Understanding (Agreement) wherein RTS agreed to prepare software for BSA to be used on the 990 series Texas Instruments computer hardware and other hardware provided by RTS. This software, with one exception, was to be supplied to BSA at no charge. RTS further agreed to pass all rights to such software to BSA for its specific use. The Agreement also provided that if a local council did not buy its hardware from RTS, RTS could bill the individual council a maximum of $2000 for configuration and installation fees, plus travel and living expenses. If a council did buy its Texas Instruments hardware from RTS, it would receive a fifteen percent discount from the list price.

Following the execution of the Agreement, RTS sold computer hardware to a number of local councils, and installed software, only, for several more. Then, in early 1984, a partial revamping of the internal workings of the BSA led to a shift in the division of the organization which would oversee its computer operations. After this shift, the director of the newly responsible Information Systems Division, Susan Spalter, solicited competitive bids from companies within the computer industry in an attempt to choose one vendor of such products to be used by BSA and recommended to local councils. Although it is unclear as to when RTS was actually informed about this competitive bidding, it is undisputed that RTS submitted a bid and was rejected in favor of another vendor in late August, 1984.

Within a month of BSA's rejection of its bid, RTS filed this lawsuit claiming, in pertinent part, that BSA had breached the Agreement by using the software provided by RTS on computer hardware other than that sold by RTS, and by denying or hindering RTS in its efforts to provide configuration and installation services to local councils. In the alternative, RTS claimed that the Agreement was without consideration or that such consideration failed in whole or in part. Additionally, RTS pled a cause of action under promissory estoppel, alleging that BSA had requested that RTS maintain an inventory of computer equipment and software in order to serve the local councils in a timely manner, and that BSA promised to pay for such equipment and software. RTS claimed that it was foreseeable that it would rely on such a promise and that RTS did, in fact, rely to its detriment. A number of damage formulas were also set forth by RTS in its pleadings, including lost profits, recovery of the software or its monetary value, and reimbursement of the reasonable value of computer inventory it had in stock at the time BSA chose another vendor.

BSA counterclaimed against RTS, likewise citing a breach of the Agreement because of certain alleged overcharges by RTS to BSA and to the local councils. A trial before the court resulted in RTS being awarded $81,150 under both breach of contract and promissory estoppel theories. BSA was held to be entitled to a $16,576 set-off because of overcharges. Both parties were awarded attorney's fees.

BSA appealed to this Court, urging fifteen points of error. RTS, in turn, raised fourteen cross-points. In an unpublished opinion, we reversed the judgment of the trial court and rendered judgment for BSA, holding that there was no competent evidence to support the judgment for RTS under either breach of contract or promissory estoppel. This Court also affirmed the trial court's judgment awarding BSA damages on its counterclaims, because we concluded that this Court lacked jurisdiction to consider RTS's cross-points.

In reversing the decision of this Court in a per curiam opinion the supreme court held that, although we had used the proper test in reviewing a no evidence point, this Court had erred in holding that there was no evidence to support RTS's recovery based upon promissory estoppel. The court held that there was more than a scintilla of evidence to support the trial court's finding that (1) RTS had detrimentally relied on BSA's alleged promise to name RTS as its vendor of choice, and (2) BSA had expected RTS to maintain an inventory of computer hardware sufficient to meet BSA's requirement that RTS be able to fill orders for local councils within thirty days. The supreme court further held that this Court erred in dismissing RTS's cross-points for want of jurisdiction because, under the court's simultaneously decided opinion in *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 639 (Tex. 1989), an appellee may complain by cross-points in its brief to a court of appeals of any error in the trial court between the appellant and the appellee, without perfecting an independent appeal, unless the appellant limits its appeal pursuant to rule 40(a)(4) of the Texas Rules of Appellate Procedure. The court then remanded the case to this Court for rulings on BSA's remaining points of error and RTS's cross-points. Although a motion for rehearing was filed by RTS specifically requesting

that the supreme court also review this Court's holding that there was no evidence to support RTS's breach of contract cause of action, the court did not address that issue.[1]

## PROMISSORY ESTOPPEL

■ Since the supreme court has already considered and rejected BSA's no evidence contention as to RTS's promissory estoppel claim, which BSA set forth in its first point of error, we will begin our analysis with BSA's second point of error in which BSA argues that "[t]he trial court erred in awarding RTS damages on a theory of promissory estoppel because there are no fact findings that BSA made a promise to RTS; that RTS substantially relied on such promise; that it was foreseeable that RTS would rely on such promise; or that injustice could be avoided only by enforcement of such promise." The four factors upon which BSA alleges that the trial court made no findings of fact mirror the elements required to invoke the doctrine of promissory estoppel as set forth in *English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983), as well as section 90 of the Restatement (First) of Contracts. We cannot agree with BSA that the trial court made no findings of fact with regard to *any* of the aforementioned elements, but it is true that the trial court made no specific finding as to the existence of a promise made by BSA to RTS. Indeed, in its brief to this Court, RTS admits that the trial court did not find an actual promise, but argues that the omitted finding must be presumed to have been found in support of the trial court's judgment, citing Rule 299 of the Texas Rules of Civil Procedure. That rule states:

> Where findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported

upon appeal by a presumption of finding upon any ground of recovery or defense, no element of which has been found by the trial court; but where one or more elements thereof have been found by the trial court, omitted unrequested elements, where supported by evidence, will be supplied by presumption in support of the judgment. Refusal of the court to make a finding requested shall be reviewable on appeal.

TEX.R.CIV.P. 299.

Upon a closer reading of Rule 299, however, it is clear that the provisions of the rule which allow omitted findings to be deemed to support the judgment of the trial court, and the case law which RTS has cited in this regard, only apply to omitted *unrequested* elements. In the case at bar, BSA made a specific request for an additional finding of fact that "Defendant [BSA] did not promise to purchase any inventory held by Plaintiff [RTS] at the time · the Agreement was terminated." This request, which was filed with the trial court on July 28, 1986, was included in Boy Scout of America's Request For Amended and Additional Findings of Fact and Conclusions of Law. On September 30, 1986, the trial court filed its own Additional Findings of Fact and Conclusions of Law, but did not address BSA's request for an additional finding of fact as to any promise allegedly made by BSA to RTS.

If a party makes a request for additional or amended findings of fact under Rule 298 of the Texas Rules of Civil Procedure and the trial court fails to make such findings, its failure is tantamount to a refusal. *Stretcher v. Gregg*, 542 S.W.2d 954, 958 (Tex.Civ.App.—Texarkana 1976, no writ). "Rule 299 allows presumed findings on *unrequested* and omitted findings. It does not permit a finding to be presumed when that finding was *requested* and *refused* by

---

1. Since this Court determined in its Opinion on Motion for Rehearing that the trial court's judgment could not be supported by either a theory of promissory estoppel or breach of contract, we did not address the fact that under Texas law those two causes of action are mutually exclusive. *Fretz Construction Co. v. Southern National Bank of Houston,* 600 S.W.2d 878, 880 (Tex.

Civ.App.—Houston [1st Dist.] 1980), *rev'd on other grounds,* 626 S.W.2d 478 (Tex.1981). Neither party raised this issue before the trial court, nor was it briefed or assigned as error on appeal. Therefore, we are not at liberty to consider its possible ramifications in this opinion. *San Jacinto River Authority v. Duke,* 783 S.W.2d 209, 210 (Tex.1990).

the trial judge." *Id.* at 958 (emphasis in the original). This stance against a presumption of support is true even in a case such as the one before us where the party that does not have the burden of proof makes an additional request for a negative finding of fact with regard to an essential element of the opposing party's case. In *Gunter v. Pogue*, 672 S.W.2d 840 (Tex.App. —Corpus Christi 1985, writ ref'd n.r.e.), the plaintiffs, who were seeking to defeat a no-contest provision of a will, had the burden to show that their will contest was brought in good faith and upon probable cause. After the trial court filed general findings of fact and conclusions of law, the defendants specifically requested the trial court to make a finding on good faith and upon probable cause, which the court refused to do. On appeal, the court of appeals reversed the trial court's judgment in favor of the plaintiffs on the ground that the trial court had refused to make a requested finding on a controlling issue necessary to uphold its judgment and, because of that refusal, such a finding could not be presumed under Rule 299. *Id. See also Chapa v. Reilly*, 733 S.W.2d 236, 237 (Tex. App.—Corpus Christi 1986, no writ).

An essential element of RTS's promissory estoppel claim against BSA is that BSA made a promise to RTS. Under Texas law, the burden of proving all the essential elements of promissory estoppel is on the party asserting the doctrine. *In re Texas Mortgage Service Corp.*, 761 F.2d 1068, 1074 (5th Cir.1985). Since BSA specifically requested a finding of fact regarding the existence of a promise made by it to RTS and the trial court refused to make such a finding, we sustain BSA's second point of error.

### BREACH OF CONTRACT

In its original appeal to this Court, BSA presented numerous points of error arguing against the trial court's judgment that BSA breached its Agreement with RTS. We sustained BSA's points and, for the sake of completeness, will reiterate in this opinion our discussion of RTS's breach of contract claims.

■ BSA contends that the trial court's findings that BSA's and RTS's contract established RTS as its vendor of choice and that BSA breached its contract are not supported by competent evidence. We agree. The Agreement states in full:

Responsive Terminal Systems, Inc. (RTS) of Plano, Texas, agrees to prepare the following software in strict accordance with the specifications set forth by the Council Management Systems (CMS) of the Boy Scouts of America, for use on the 990 series Texas Instruments computer hardware and other hardware provided by them.

All application software for use by Council Management Systems of the Boy Scouts of America, which is provided by RTS, will be supplied at no charge, with the exception of ACCOFAX II.

RTS will charge CMS at the rate of $1,000 per council for the first 12 installations of the Texas Instruments Model 4 or larger computers, to cover out-of-pocket expenses incurred by RTS for the development of this program.

RTS offers a minimum of a 15% discount from list price for Texas Instruments hardware provided to councils, coordinated by CMS.

All source codes for ACCOFAX II, Accounts Payable, Payroll, Membership Support, and Fundraising applications will be provided to CMS upon completion, as a donation of service.

RTS will not provide direct software services to councils for the above applications on a sale basis without the approval of CMS and the Boy Scouts of America.

RTS may bill a local council a maximum of $2,000 for configuration and installation fees, plus travel and living expenses for each hardware system not sold by RTS. Payment by the council is to be made upon receipt of an invoice.

This is our entire understanding, and no other assumptions are valid.

The Agreement was signed by representatives for both parties.

■ The Agreement contains no provision whereby BSA promises that RTS is its vendor of choice or that it will recommend

RTS to local councils. The Agreement itself negates any inference that RTS had an exclusive right to sell hardware to local councils by providing for the payment of installation fees to RTS for installing software on hardware systems not sold by RTS. RTS contends, however, that this contract may be supplemented by oral testimony at trial. BSA counters by arguing that the evidence of an oral agreement is barred by the parol evidence rule. We agree with BSA.

The parol evidence rule is not a rule of evidence but, rather, is a rule of substantive contract law. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 32 (1958). The rule functions as an evidentiary rule in that extrinsic evidence which seeks to vary, add to, or contradict the terms of a written agreement is inadmissible. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex.1981); *Jauregui v. Jones*, 695 S.W.2d 258, 262 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.). As a substantive rule, the parol evidence rule denies efficacy to prior or contemporaneous expressions relating to the same subject matter as that encompassed in the final written contract between the parties. *Pan American Bank v. Nowland*, 650 S.W.2d 879, 884 (Tex.App. —San Antonio 1983, writ ref'd n.r.e.).

Oral testimony seeking to establish an agreement between the parties that RTS was BSA's vendor of choice was an attempt to add additional terms to the contract and was, therefore, inadmissible as an evidentiary matter. *See Caviness Packing Co. v. Corbett*, 587 S.W.2d 543, 547 (Tex. Civ.App.—Amarillo 1979, writ ref'd n.r.e.); *Ross v. Stinnett*, 540 S.W.2d 493, 495 (Tex. Civ.App.—Tyler 1976, no writ). RTS argues, however, that the parol evidence was admissible to show the true consideration of an agreement, citing *DeLuca v. Munzel*, 673 S.W.2d 373, 376 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The true consideration, according to RTS, was that RTS would develop software in exchange for BSA's designation of RTS as its vendor of choice.

■ A noted exception to the parol evidence rule is that such evidence is admissible to show want or failure of consideration and to establish the real consideration given for the instrument. *DeLuca*, 673 S.W.2d at 376; *Time Insurance Agency, Inc. v. Grimes*, 613 S.W.2d 40, 42 (Tex.Civ. App.—Texarkana 1981, no writ). A recital or acknowledgment of consideration received (e.g., "for $10.00 and other good and valuable consideration," *Grimes*, 613 S.W.2d at 42) is no more than a statement of fact which may be contradicted by parol evidence. *State v. Keeton Packing Co.*, 487 S.W.2d 775, 779 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). It is not, however, permissible to accept extrinsic evidence contrary to a contractual consideration:

> A written promise to perform in the future, whether by money or in services, is a contractual consideration which, unlike one that is not mentioned or is mentioned merely as a receipt or by way of acknowledgment of something performed in the past, cannot be set aside on any different principle from that applicable to other material future undertakings expressed and defined by the written contract.

*Chalk v. Daggett*, 257 S.W. 228, 230 (Tex. Comm'n App.1924, judgm't adopted); *see also Lakeway Co. v. Leon Howard, Inc.*, 585 S.W.2d 660, 662 (Tex.1979). Further, parties cannot circumvent the parol evidence rule by contending that missing promises constitute additional consideration. *Saunders v. Alamo Soil Conservation Dist.*, 545 S.W.2d 249, 252 (Tex.Civ. App.—San Antonio 1976, writ ref'd n.r.e.). The agreement between BSA and RTS contains contractual consideration. We are not called upon to determine the sufficiency of that consideration. The parol evidence was inadmissible.

■ As a matter of substantive law, it is well settled that when contracting parties have concluded a valid integrated agreement dealing with the subject matter between them, the parol evidence rule will prevent enforcement of prior or contemporaneous agreements which are inconsistent with the integrated agreement. *Weinacht v. Phillips Coal Co.*, 673 S.W.2d 677, 679

(Tex.App.—Dallas 1984, no writ). Absent pleading and proof of ambiguity, fraud, or accident, a written instrument presumes that all prior agreements of the parties relating to the transaction have been merged into the written instrument. *Weinacht,* 673 S.W.2d at 679.

■ It is equally well settled that in the absence of fraud, mistake, or accident, the parol evidence rule is particularly applicable where the written contract contains a recital that the contract encompasses the "entire agreement between the parties", or a similarly worded merger provision. *Id.; Austin Shoe Stores v. The Elizabeth Co.,* 538 S.W.2d 677, 680 (Tex.Civ.App.—Waco 1976, writ ref'd n.r.e.); *Ragland v. Curtis Mathes Sales Co.,* 446 S.W.2d 577, 579 (Tex.Civ.App.—Waco 1969, no writ). There are no allegations of fraud, accident or mistake in RTS's petition, and the contract contains the following merger clause: "This is our entire understanding, and no other assumptions are valid." We hold that the agreement is a valid integrated agreement, preventing enforcement of any alleged oral agreement between BSA and RTS.

■ Of course, the parol evidence rule does not preclude enforcement of prior or contemporaneous agreements which are collateral to, are not inconsistent with, and do not vary or contradict the express or implied terms or obligations thereof. *Hubacek,* 317 S.W.2d at 32; *Weinacht,* 673 S.W.2d at 680; *Bowers Steel, Inc. v. De-Brooke,* 557 S.W.2d 369, 373 (Tex.Civ.App. —San Antonio 1977, no writ). To be collateral, the oral agreement must be such as the parties might naturally make separately and would not ordinarily be expected to embody in the writing; further, the allegedly collateral agreement must not be so clearly connected with the principal transaction as to be part and parcel thereof. *Weinacht,* 673 S.W.2d at 680; *Leyendecker v. Strange,* 204 S.W.2d 845, 847 (Tex.Civ. App.—Galveston 1947, writ ref'd n.r.e.). We hold that the alleged oral agreement in the instant case is not collateral to, and is an attempt to vary, the written agreement between the parties. Consequently, the parol evidence rule prevents the enforcement of the alleged agreement that RTS is BSA's vendor of choice.

■ In support of its conclusion that BSA breached the contract, the trial court also found that BSA had prevented RTS from installing and configuring RTS-developed software on hardware systems not sold to local councils by RTS. The agreement provides: "RTS may bill a local council a maximum of $2,000 for configuration and installation fees, plus travel and living expenses for each hardware system not sold by RTS." Assuming, without deciding, that this provision gives RTS the right to install software for a $2,000 fee rather than merely setting the maximum fee if and when such installation occurs, we hold that there is no competent evidence to support the finding that BSA prevented RTS from installing software. In reaching this conclusion, we have considered only the evidence tending to support the finding, viewing it and all reasonable inferences therefrom in the light most favorable to the finding. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986). There is no evidence in the record that BSA informed local councils not to hire RTS to install software, or that BSA took any other action to prevent councils from hiring RTS. RTS cannot rely upon parol testimony that BSA stopped naming RTS as its vendor of choice for hardware as evidence that BSA prevented it from installing software, because we have held that there is no competent evidence of a contractual duty that BSA designate RTS its vendor of choice. Consequently, the judgment of the trial court cannot be supported under a theory of breach of contract.

Having sustained BSA's appeal of the trial court's finding of liability against it under both theories of promissory estoppel and breach of contract, we do not find it necessary to review BSA's remaining points of error concerning damages issues, attorneys fees, and other actions of the trial court with regard to its judgment, since our holdings as to promissory estoppel and breach of contract are dispositive of BSA's appeal, *Burkart v. Health & Ten-*

*nis Corp. of America, Inc.*, 730 S.W.2d 367, 371 (Tex.App.—Dallas 1987, no writ); *see* TEX.R.APP.P. 90(a), except as to BSA's last point of error which does not deal with the Agreement.

## SOFTWARE SUPPORT

█ In its final point of error, BSA alleges that the trial court erred in finding that RTS did not charge BSA or the local councils for software support not actually rendered. The record shows that BSA, as well as a number of the local Boy Scout councils, had service contracts with RTS for maintenance of the computer systems purchased from RTS. These contracts were separate and distinct from the Agreement. There was conflicting evidence at trial as to whether RTS discontinued this software support to BSA and the local councils after it was informed that RTS was no longer BSA's vendor of choice. Susan Spalter testified that RTS refused to provide the support, even though its service contracts were still being paid on a monthly basis by BSA and the local councils. A representative of RTS stated that RTS continued servicing the computer equipment and, in fact, was still providing software support at the time of trial.

A court of appeals will uphold a trial court's findings unless they are manifestly erroneous and without any evidence to support them, or are so against the great weight and preponderance of the evidence as to be manifestly wrong. *Hinojosa v. Castellow Chevrolet Oldsmobile, Inc.*, 678 S.W.2d 707, 713 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The duty of an appellate court is to review the evidence as presented, and we may not substitute our judgment for the trier of fact, whether it be a judge or jury. *Andy Machinery Company, Inc. v. Hofstadter*, 721 S.W.2d 472, 474 (Tex.App.—Corpus Christi 1986, no writ).

The trial court found that RTS did not charge BSA or the local councils for software support not actually rendered. Since this finding is not so against the evidence presented as to reach the *Hinojosa* stan-

dard for reversal, we overrule BSA's final point of error.

## RTS CROSS–POINTS

It is likewise unnecessary for us to review RTS's cross-points seeking further damages under its breach of contract claim, because of our previous holding that the trial court's judgment that BSA breached the Agreement was not supported by competent evidence. The remainder of RTS's cross-points deal with the trial court's award of a set-off of $16,576 to BSA, as well as attorney's fees. The $16,576 figure is a combination of an overcharge of $1,955 by RTS to BSA for preloading application programs on hardware purchased from another vendor, and a number of overcharges by RTS to local Boy Scout councils.

## LOCAL COUNCILS

█ In its findings of fact, the trial court found that RTS sold Texas Instruments computer hardware to certain local Boy Scout councils without including in the price of the hardware the minimum fifteen percent discount contracted for under the Agreement. The court further found that the local councils were corporations or entities separate and distinct from BSA; that the obligation to pay for the computer hardware furnished by RTS was with the local councils, and not BSA; and, that the local councils did, in fact, pay RTS, and other hardware vendors, directly. Included in its conclusions of law was the trial court's judgment that BSA had the legal capacity to sue and to recover damages on behalf of the local councils. RTS's fifth counter-point complains of these latter conclusions of law, contending that BSA had no right or standing to bring a cause of action for any damages allegedly suffered by the local councils. We agree.

It is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress from an injury. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976); *Sherry Lane National Bank v. Bank of Evergreen*, 715 S.W.2d 148, 152 (Tex.App.—Dallas 1986, writ ref'd

n.r.e.). Stated another way, one may not maintain an action based upon the harm suffered by another. *Texas Industrial Traffic League v. Railroad Commission of Texas*, 628 S.W.2d 187, 191 (Tex.App.—Austin 1982), *rev'd on other grounds*, 633 S.W.2d 821 (Tex.1982).

 In contract actions, privity of contract is an essential element of recovery. *Republic National Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1977, no writ). In order to maintain an action to recover damages flowing from the breach of a written agreement, there must ordinarily be a privity existing between the party damaged and the party sought to be held liable for the repudiation of the agreement. *Id.* "A well defined exception to the general rule thus stated is that one who is not privy to the written agreement may demonstrate satisfactorily that the contract was actually made for his benefit and that the contracting parties intended that he benefit by it so that he becomes a third-party beneficiary and eligible to bring an action on such agreement." *Id.* By its very definition, however, such a third-party beneficiary exception arises when one party asserts that it is the third-party beneficiary of a written agreement and, therefore, does not have to be in privity of contract with another party to bring an action against that party for breach of contract. *See Exchange Bank & Trust v. Lone Star Life Ins. Co.*, 546 S.W.2d 948, 953 (Tex.Civ.App.—Dallas 1977, no writ); *Briercroft Sav. & Loan Ass'n v. Foster Fin. Corp.*, 533 S.W.2d 898, 902 (Tex.Civ.App.—Eastland 1976, writ ref'd n.r.e.). In the case before us, the only possible third-party beneficiaries to the Agreement would have been the local Boy Scout councils, which were not parties to this litigation. The third-party beneficiary exception cannot be asserted by BSA in an attempt to recover damages on behalf of the local councils.

 BSA acknowledges the general rule relating to privity of contract, but cites *Graham v. Turcotte*, 628 S.W.2d 182 (Tex. Civ.App.—Corpus Christi 1982, no writ), for the proposition that courts have allowed recovery in circumstances where some "special relationship" is shown to exist. In *Graham*, the plaintiffs contracted with a bank to obtain a monthly payment real estate lien note. A clause contained in the note required the plaintiffs to pay a certain percentage of the principal and interest still owing on the note as attorney's fees, if the note ever had to be turned over to an attorney for collection. After numerous late payments, the plaintiffs were held to be in default by the bank, and eventually paid a fairly large sum in attorney's fees. The plaintiffs filed suit against several defendants, including the collections attorney, alleging, in part, that they had been forced to pay excessive attorney's fees. The court held that since the plaintiffs had a contract with the bank as to the payment of attorney's fees, and the bank had a separate contract with the defendant attorney regarding his fees, there was no privity of contract between the plaintiffs and the attorney, and, therefore, the plaintiffs could not recover in their action against the attorney. In so holding, the court noted that the plaintiffs had not only been unable to show privity of contract between themselves and the defendant attorney, but also had failed to show any special relationship which would entitle them to sue the attorney directly. *Id.* at 184.

It is clear from the facts of *Graham*, as well as a review of the cases cited by the *Graham* court in support of its "special relationship" exception, that the special relationship it is referring to is that of a third-party beneficiary to the contract. BSA argues that it has the capacity to sue and recover damages on behalf of the local councils because it has a special and unique relationship with the local councils, and, as a matter of efficiency and economy, it is better situated to pursue claims against RTS on behalf of the local councils. Since we hold that this is clearly not the type of "special relationship" contemplated by the *Graham* court, and because, under general contract law, BSA may not maintain an action based upon any harm suffered by the local councils, which were neither parties to the Agreement nor to this lawsuit, we sustain RTS's fifth cross-point of error

and reverse the trial court's award of damages to BSA for overcharges made by RTS to the local councils.

## OVERCHARGE TO BSA

In two combined cross-points, RTS urges this Court to hold that there was no evidence or, in the alternative, insufficient evidence to support the trial court's finding that RTS overcharged BSA by $1,955 for preloading application programs on hardware purchased from another vendor. We will first address RTS's no evidence point. In doing so, we will consider only the evidence and the inferences tending to support the finding and will disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). Under a no evidence point, it is fundamental that the trial court's fact findings must be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown Sav. & Loan Ass'n.,* 595 S.W.2d 486, 488 (Tex.1979).

The undisputed evidence presented at trial was that BSA paid RTS a $2,000 fee for the preloading of application programs, which took approximately an hour. Susan Spalter testified that RTS had indicated to BSA that support charges and software charges would be billed to BSA at a rate of $45 an hour. In considering only this evidence and the inferences therefrom, we conclude that there is some evidence to support the trial court's award of $1,955 in damages to BSA.

We now turn to RTS's insufficient evidence point. To determine whether the evidence is factually sufficient to support the trial court's findings, we will consider all of the evidence in the record that is relevant to the fact being considered. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 633–636 (Tex.1986). This Court may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). RTS presented evidence at trial that it invoiced BSA for $2,000 in connection with the preloading work at issue, and that BSA paid that amount without protest. It was further established by RTS that the last paragraph of the Agreement provided that RTS could bill $2,000 for configuration and installation fees. BSA maintained in its argument to this Court that it was not aware at the time it paid RTS's invoice that the preloading work had taken only an hour. BSA also pointed out that the $2,000 fee provided for in the Agreement was a maximum amount and not a set fee to be paid in every case. Considering all of the foregoing evidence, we conclude that the evidence is factually sufficient to support the trial court's finding that RTS overcharged BSA by $1,955 for preloading application programs on hardware purchased from another vendor. Therefore, we affirm the trial court's award of that amount to BSA.

## BSA ATTORNEY'S FEES

The trial court held in its Additional Findings of Fact and Conclusions of Law, filed subsequent to its original judgment, that BSA was entitled to recover attorney's fees. RTS then requested an additional finding of fact which stated that BSA did not present its claim, upon which its counterclaim was based, to RTS at any time prior to the trial of this lawsuit. The trial court refused to make this additional finding. RTS now complains in a cross-point of error that the trial court erred in awarding BSA attorney's fees because there is no basis in law for such a recovery. It is RTS's contention that BSA did not make a presentment of its claim with regard to overcharges, and that such a presentment is required by the provisions of section 38.002 of the Texas Civil Practice and Remedies Code.[2] There is no evidence

---

2. Section 38.002 states as follows:
 To recover attorney's fees under this chapter:
 (1) the claimant must be represented by an attorney;
 (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
 (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented. Tex.Civ.Prac. & Rem.Code Ann. § 38.002 (Vernon 1986).

in the record of such a presentment, and BSA does not assert that it presented a claim for overcharges to RTS. Instead, BSA argues that under section 38.002 a defendant is not required to make a formal presentment before filing a counterclaim. This is simply not the law. The language of section 38.002 does not make a distinction between plaintiffs and defendants with regard to its mandatory language of presentment. Further, in *Dobbins v. Redden*, 759 S.W.2d 477 (Tex.App.—San Antonio 1988, no writ), the San Antonio Court of Appeals held that the defendant in that case could not collect attorney's fees in connection with his breach of contract counterclaim because he had not complied with section 38.002. *Id.* at 480; *see also Kold-Serve Corp. v. Ward*, 736 S.W.2d 750, 756 (Tex.App.—Corpus Christi 1987), *writ dismissed per curiam*, 748 S.W.2d 227 (Tex.1988).

We reverse and remand this cause, in part, for a new trial in accordance with this opinion. We reverse and render with regard to BSA's award of damages on behalf of the local Boy Scout councils, and reverse and render as to BSA's recovery of attorney's fees. Finally, we affirm the trial court's judgment regarding damages owed to BSA by RTS for an overcharge of $1,955 for the preloading of application programs on hardware purchased from another vendor.