**William A. WINDHAM, Appellant,**

v.

**CAL–TIM, LTD., Appellee.**

**No. 09–00–492 CV.**

Court of Appeals of Texas,
Beaumont.

Submitted June 25, 2001.

Decided July 12, 2001.

Rehearing Overruled Aug. 9, 2001.

J. Chad Gauntt, Steven C. Earl, Gauntt & Kruppstadt, L.L.P., The Woodlands, for appellant.

Ralph K. Harrison, Stephen M. Schlacks, Harrison & Cox, P.L.L.C., The Woodlands, for appellee.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

WALKER, Chief Justice.

Cal–Tim, Ltd., filed a suit to collect unpaid rent against the lessee, The Golf Stop, Inc., and its guarantor, William A. Windham. Windham raised the affirmative defense of failure of consideration. Following a bench trial, the trial court rendered judgment for the plaintiff. Windham raises the following issue on appeal:

> Was the November–December 1994, execution of a commercial lease sufficient consideration for the later execution of a written guaranty in March 4, 1995, where no independent consideration was given for the execution of the written guaranty and evidence that the lease required or contemplated a guarantor violated the parol evidence rule, four corners doctrine and merger doctrine?

Windham argues that the evidence is both legally and factually insufficient to support the trial court's finding. Lack of consideration is an affirmative defense which Windham bore the burden of establishing at trial. TEX.R. CIV. P. 94. We review the legal sufficiency of an adverse finding on which the appellant had the burden of proof by examining the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). If there is no evidence to support the finding, we then examine the entire record to determine if the appellant proved his affirmative defense as a matter of law. *Id.* To prevail on appeal, Windham must demonstrate that the evidence conclusively established all vital facts in support of the issue of lack of consideration. *See id.*

To review the challenge to the factual sufficiency of the evidence, we consider all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *Id.* If the challenge is to a failure to find, we reverse only if the failure to find is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Ames v. Ames,* 776 S.W.2d 154, 158–59 (Tex.1989). We must remain mindful that the trial court was not convinced by a preponderance of the evidence. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex.1988).

Cal–Tim built-out the property, so the lessee did not enter into possession for several months. The pertinent documents are dated as follows:

| | |
|---|---|
| Financial Statement | October 18, 1994 |
| Lease (term 62 months from March 4, 1995) | November 8, 1994 |
| Subordination of Landlord's Lien | January 19, 1995 |
| Lease Amendment | January 26, 1995 |
| Guaranty | March 4, 1995 |
| Declaration of Commencement (March 1, 1995) | March 14, 1995 |

Windham argues that consideration was lacking because the lease did not expressly require his guaranty. The lease, which includes a merger clause regarding agreements between the lessor and the lessee, does not mention guaranty by a third party. The guaranty, on the other hand, states:

WHEREAS, Landlord [Cal–Tim] has requested the undersigned [Windham] (individually, a "Guarantor" and collectively, "Guarantors") to guarantee to Landlord the punctual performance and observance of all of Tenant's [Golf Stop's] obligations under the Lease as herein provided.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency whereof is hereby acknowledged and confessed, and as a material inducement to and in consideration of Landlord entering into the Lease with Tenant, Guarantors hereby covenant and agree with Landlord as follows. . . .

The issue is not the adequacy of the consideration for the execution of the lease by Cal–Tim and Golf Stop, but the adequacy of the consideration for the execution of the guaranty by Windham. Cal–Tim contends the execution of the lease supplies consideration for the guaranty regardless of the order of the documents' execution.

Windham argues that Cal–Tim cannot resort to parol evidence to prove consideration was paid. Caselaw distinguishes evidence of the true consideration for a contract, which is consistent with the contractual recital of consideration, from evidence of promises not contained in the instrument, which are inconsistent with the contractual recitals even if they formed part of the inducement for the execution of the instrument. *See Saunders v. Alamo Soil Conservation Dist.,* 545 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). The guaranty recites that it is given for consideration, and as a material inducement to entering into the lease. Extrinsic evidence that execution of the lease was in fact consideration for the execution of the guaranty would not be inconsistent with the contractual recital of consideration. It is Windham who must resort to parol evidence to prove lack of consideration. *See DeLuca v. Munzel,* 673 S.W.2d 373, 376 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)(parol evidence is admissible to show want of consideration). It would defy logic to permit Windham to testify that he received no actual consideration for executing the contract, but refuse to consider Harris's testimony that the lease and guaranty were delivered contempora-

neously as a single document, before Golf Stop accepted and occupied the premises.[1]

Timothy S. Harris testified that the guaranty was stapled to the lease and was signed on the day the original lease was signed, sometime in December 1994. Windham testified he signed the document on March 4, 1995. Before Golf Stop occupied the premises, Harris received the signed lease, the signed lease amendment, and the signed guaranty. The trial court found that the declaration of commencement was dated and signed on March 14, 1995, ten (10) days after the guaranty was signed. Thus, we have a finding, supported by the evidence, that Windham executed the guaranty on March 4. We also have a finding, supported by the evidence, that the signed guaranty was attached as part of the lease agreement. The signed guaranty was delivered to the lessor before the parties memorialized their acceptance of the premises and the commencement of the lease term in the declaration of commencement.

Windham argues that the execution of the lease cannot serve as consideration for the execution of the guaranty because the lease was signed before he signed the guaranty. Two cases support his position: *Fourticq v. Fireman's Fund Insurance Co.*, 679 S.W.2d 562 (Tex.App.—Dallas 1984, no writ), and *Green v. American Refining Properties*, 22 S.W.2d 343 (Tex. Civ.App.—El Paso 1929, no writ). In *Fourticq*, neither the indemnitor nor the primary debtor received any benefit from an indemnity agreement executed after the creditor provided notice of termination of the underlying contract. *Fourticq*, 679 S.W.2d at 565. Since the creditor suffered no detriment from the indemnity and the debtor received no benefit, the agreement lacked consideration and was unenforceable. *Id.* In *Green*, the original contract was fully executed and delivered before the guaranty was signed, and no evidence showed that the note had been accepted upon the strength of the guarantor's agreement. *Green*, 22 S.W.2d at 345. Although the note was past due at the time, the creditor did not forebear on its collection efforts as a result of the guaranty. *Id.*

Cal–Tim cites *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874 (Tex.1976), and *Maykus v. Texas Bank & Trust Co. of Dallas*, 550 S.W.2d 396 (Tex. Civ.App.—Dallas 1977, no writ). In *Maykus*, the promissory note pre-dated the guaranty. *Maykus*, 550 S.W.2d at 398. The court held that mere evidence of a time discrepancy in execution between a note and a written guaranty agreement is legally insufficient to rebut the presumption of consideration supporting the guaranty. *Id.* In *Bohart*, the court held the guaranty was supported by consideration, although it was executed after delivery of the equipment in the underlying transaction, where the requirement of a guaranty was discussed before delivery and the guarantor was a stockholder of the primary debtor. *Bohart*, 539 S.W.2d at 878.

Windham also relies upon *Boy Scouts of America v. Responsive Terminal Systems, Inc.*, 790 S.W.2d 738 (Tex.App.—Dallas 1990, writ denied), in support of his argument that evidence of any prior or contemporaneous promises to guarantee payment cannot be considered to vary the terms of the lease. *Boy Scouts* involved a prior oral agreement between the parties to the contract being enforced. *Id.* at 744–45.

---

1. Likewise, the parol evidence rule would bar the admission of evidence purporting to contradict the parties' agreement that the guaranty would be effective on March 4, but would not bar evidence establishing when the agreement was in fact signed. *Carr v. Christie*, 970 S.W.2d 620, 625 (Tex.App.—Austin 1998, pet. denied).

Agreements which are collateral to, are not inconsistent with, and do not vary or contradict the express or implied terms of a contract are enforceable. *Id.* at 745. The guaranty agreement signed by Windham does not vary the terms of the lease in any manner. Being between parties other than the signatories on the lease, it is a document of a sort that might be naturally embodied in a separate writing. The findings of fact establish that the guaranty agreement was circulated with the lease and its addendum, as part of the same transaction. Its terms do not vary the obligations of either party to the lease.

Unlike *Fourticq* and *Green,* and as was the case in *Bohart* and *Maykus,* there is evidence in the record that Windham's guaranty was contemplated by and executed in the course of the original transaction. The lease agreement, and its amendment, comprised the entire agreement between Cal–Tim and Golf Stop. The guaranty comprised the entire agreement between Cal–Tim and Windham. Windham was both an officer and a director of Golf Stop, which was a family business. Windham had $120,000 invested in the enterprise. Harris testified that before the lease was entered into, Cal–Tim made it clear that a guaranty was required because the lease required an extensive build-out. Thus, a benefit inured to Windham by reason of his execution of the guaranty.

Our review of the record reveals evidence supporting a finding that the guaranty agreement was supported by consideration. The evidence that the guaranty lacked consideration does not so greatly outweigh the evidence of consideration as to compel a conclusion that the judgment is clearly wrong and unjust. We overrule the issue presented and affirm the judgment.

AFFIRMED.