GR&S Atlantic Beach, LLC v. Hull, 2013 NCBC 39.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
11 CVS 5883

GR&S ATLANTIC BEACH, LLC and
GR&S ATLANTIC BEACH HOTEL,
LLC,

Plaintiffs,

v.

H. WILLIAM HULL and MARILYN
H. HULL,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTION
TO RECONSIDER**

THIS MATTER is before the court on Defendants' Motion to Reconsider ("Motion")[1], which seeks the court's determination of whether GR&S Atlantic Beach, LLC ("GR&S") and GR&S Atlantic Beach Hotel, LLC ("GR&S Hotel") retain any right to bring claims pursuant to an Indemnification Agreement with Defendants after the Indemnification Agreement was assigned to a third party in foreclosure.

## I.   PROCEDURAL BACKGROUND

Plaintiffs GR&S and GR&S Hotel filed suit in Wake County on April 15, 2011, and filed an Amended Complaint on September 30, 2011.  In their Amended Complaint, GR&S and GR&S Hotel seek indemnification for several different categories of claims pursuant to an Indemnification Agreement executed between GR&S and Defendants in connection with GR&S' purchase of a hotel from Defendants: (1) the "Tank Collapse Claims"; (2) the "IBRC Litigation Claims"; and (3) the "Legacy Repairs Claims."  (Am. Compl. ¶¶ 10–16.)

---

[1] Defendants' Motion recites that it is brought pursuant to N.C. R. Civ. P. ("Rule(s)") 54(b) and 56.  The North Carolina Rules of Civil Procedure do not include a provision for "reconsideration."  The court believes the more proper basis here is Rule 60(b).  *See Diggs v. Forsyth Mem'l Hosp., Inc.*, 2010 N.C. App. LEXIS 1285, at *7–9 (July 20, 2010).

On October 10, 2012, the court issued its Summary Judgment Order, in which it held, *inter alia*, that the issue of whether the exclusionary clause in the General Assignment between GR&S and GR&S Hotel operated to leave ownership of any claim with GR&S was an issue of fact to be determined at trial. (Summary Judgment Order ¶¶ 78.) GR&S has never contended that it retained the Legacy Repairs Claims. (Summary Judgment Order ¶¶ 80–82; Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 8.) The court also determined that the appointment of a receiver over the Hotel, discussed in more detail below, did not divest GR&S Hotel of its claims arising out of the Indemnity Agreement.

On June 28, 2013, the court issued an order clarifying its Summary Judgment Order ("Clarification Order") to make clear that the IBRC Litigation Claims are being made by GR&S, not GR&S Hotel, so that the issue of whether GR&S retained ownership of that claim when it executed the General Assignment is among the issues reserved for trial. (Clarification Order 1–2.) The court now also clarifies that, if GR&S retained ownership of the IBRC Litigation Claims, any attorneys' fees incurred in connection with the IBRC Litigation Claims (to the extent recoverable at all) would be limited to those incurred within three years of the filing of the lawsuit brought by GR&S in Carteret County on February 19, 2008, rather than within three years of the filing of the present lawsuit as would be the case if the claim was being pursued by GR&S Hotel. *See* (Summary Judgment Order ¶¶ 5, 68.)

The present Motion is brought based upon facts which occurred after the entry of the Summary Judgment and Clarification Orders. While Defendants contend these later events defeat all claims, the court believes their impact is restricted to claims assigned to GR&S Hotel by the General Assignment.

## II.    FACTUAL BACKGROUND

In 2004, GR&S purchased the Sheraton Atlantic Beach Oceanfront Hotel ("Hotel") from Defendants. (Am. Compl. ¶ 9.) In connection with the purchase of

the Hotel, GR&S and Defendants entered into an Indemnification Agreement, pursuant to which, GR&S alleges, Defendants agreed to indemnify GR&S and its successors and assigns for specified categories of costs and expenses relating to the Hotel. (Am. Compl. Ex. A.) On May 11, 2007, GR&S transferred the Hotel and assigned the Indemnity Agreement to GR&S Hotel pursuant to a General Assignment. The General Assignment included a clause excepting from assignment claims "for periods or events occurring prior to the date hereof . . . ." (General Assignment 2.) The Parties dispute what provisions of the General Assignment are subject to this exclusion, and specifically whether the Tank Collapse Claims and the IBRC Litigation Claims were excepted from assignment.

To finance the purchase of the Hotel from GR&S, GR&S Hotel took out a $15 million loan and executed a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Deed of Trust") to secure that loan. (Br. in Supp. of Defs.' Mot. to Reconsider 3.) The Deed of Trust included the following provisions:

> Section 1.1 <u>PROPERTY MORTGAGED</u>. [GR&S Hotel] does hereby irrevocably mortgage, grant . . . assign . . . transfer and convey to Trustee for the benefit of Beneficiary, as nominee of Lender and its successors and assigns, to and under the following property, rights, interests and estates now owned, or hereafter acquired by [GR&S Hotel] (collectively, the "Property"):
>
> (a) <u>Land</u>. The real property described in <u>Exhibit A</u> [describing the hotel] . . . ;
>
> (n) <u>Agreements</u>. To the extent assignable, all agreements, contracts, certificates . . . and other documents, now or hereafter entered into by [GR&S Hotel] . . . and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or operation of the Land and any part thereof . . . and all right, title and interest of [GR&S Hotel] therein and thereunder, including, without limitation, the right, upon the happening of any Event of Default hereunder, to receive and collect any sums payable to [GR&S Hotel] thereunder . . . ."

(Defs.' Mot. to Reconsider Attach. I § 1.)

The $15 million loan and the rights in the Deed of Trust were transferred from the original lender to a successor lender in March 2012. (Br. in Supp. of Defs.' Mot. to Reconsider 3.) As of April 26, 2012, GR&S Hotel was in default on the $15 million loan, and on that day a Consent Order for Appointment of Receiver ("Receivership Order") was entered in Carteret County, which appointed a receiver to take charge of the Hotel in anticipation of foreclosure proceedings. (Br. in Supp. of Defs.' Mot. to Reconsider 4; Aff. of H. William Hull Attach. I, June 13, 2013.)

On December 12, 2012 the Hotel was sold at public auction to Newport Group, Inc. ("Newport Group"), and the successor lender assigned all its interest in the Deed of Trust to Newport Group. (Br. in Supp. of Defs.' Mot. to Reconsider 4.) On December 28, 2012, after the upset bid period expired, the Deed of Trust was filed in Carteret County along with a Notice of Foreclosure of Deed of Trust. (Br. in Supp. of Defs.' Mot. to Reconsider 4.)

Based on the sale of the Hotel to Newport Group, Defendants filed their Motion on March 22, 2013. On May 17, 2013, Plaintiffs filed a Motion for Limited Stay of Consideration of Defendants' Motion to Reconsider, which contended that Rule 17(a) required the court to allow Plaintiffs a "reasonable time" to seek ratification or substitution by the real party in interest and sought additional time to seek that ratification or substitution. (Pls.' Mot. for Limited Stay of Consideration of Defs.' Mot. to Reconsider 1–2.) The court granted Plaintiffs' Motion for Limited Stay on May 29, 2013, staying the case until June 27, 2013 (97 days after the Motion to Reconsider was filed). (Order May 29, 2013.)

On June 28, 2013, Newport Group executed a Release of All Claims in favor of Defendants ("Release"). (Defs.' Status Report ¶ 4, Attach. I.) The Release contends that Newport Group is "the rightful owner of the Indemnity Agreement and any rights thereunder," and purports to release Defendants from any and all claims or damages "which arise from or are related in any way, no matter how remote, to the [present lawsuit], the Indemnity Agreement, the Treatment Plant, or the Hotel . . . ." (Defs.' Status Report Attach. I, at §§ I(f), II.)

## III.  LEGAL STANDARD

Rule 60(b) permits a court, "[o]n motion and upon such terms as are just," to "relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons," among others:

> (2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
>
> . . .
>
> (6) Any other reason justifying relief from the operation of the judgment.

N.C. R. Civ. P. 60(b) (2013).  "It is the duty of the judge presiding at a Rule 60(b) hearing to make findings of fact and to determine from such facts whether the movant is entitled to relief from a final judgment or order." *Hoglen v. James*, 38 N.C. App. 728, 731, 248 S.E.2d 901, 903 (1978).

The court now makes the following FINDINGS OF FACT, which it believes to be uncontested based on pleadings and affidavits that have not been opposed:

1. Defendants filed their Motion seeking relief from the court's Summary Judgment Order, which allowed GR&S and GR&S Hotel to continue prosecuting any claims each properly owned pursuant to the Indemnity Agreement and the General Assignment;

2. After the entry of the Summary Judgment and Clarification Orders, the ownership of the Hotel and the Indemnity Agreement, out of which the Plaintiffs' claims are based, were, at least in part, assigned to Newport Group pursuant to a foreclosure sale;

3. After the entry of the Summary Judgment and Clarification Orders, Newport Group executed a Release of all claims it then had rights to pursue against Defendants;

4. The occurrences in paragraphs 2 and 3 above constitute "newly discovered evidence which by due diligence could not have been discovered" before the entry of the Summary Judgment Order; and

5. The occurrences in paragraphs 2 and 3 above also constitute "reason[s] justifying relief from the operation of [the Summary Judgment Order]".

## III. ANALYSIS

Defendants contend that Newport Group became the owner of all claims arising out of the Indemnity Agreement. (Defs.' Mot. to Reconsider 4.) In fact, the Motion necessarily seeks to have the court modify its earlier ruling that the Tank Collapse Claims and the IBRC Litigation Claims were, as a matter of law, assigned to GR&S Hotel pursuant to the General Assignment. There is no basis to modify that holding, and to that extent, Defendants' Motion is DENIED. The court restricts its consideration to the Legacy Repairs Claims, which GR&S admits were being pursued solely by GR&S Hotel. *See* (Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 8.)

"The right to receive money due or to become due under an existing contract may be assigned." *Booker v. Everhart*, 294 N.C. 146, 153, 240 S.E.2d 360, 364 (1978) (citing *Lipe v. Guilford Nat'l Bank*, 236 N.C. 328, 72 S.E.2d 759 (1952)). "An assignee of a contractual right is a real party in interest and may maintain the action." *Morton v. Thornton*, 259 N.C. 697, 699, 131 S.E.2d 378, 380 (1963).

The Deed of Trust secured all rights under the Indemnity Agreement owned by GR&S Hotel, which rights were then assigned to Newport Group. But GR&S Hotel could only assign those rights in the Hotel and Indemnity Agreement which it owned at the time of executing the Deed of Trust. *Hurst v. West*, 49 N.C. App. 598, 606, 272 S.E.2d 378, 384 (1980) (An assignee can "take by transfer only what rights and interests the assignor had at the time of the assignment." (citing *Holloway v. Depositors Nat'l Bank*, 211 N.C. 227, 189 S.E. 789 (1937))). As discussed in this court's Summary Judgment Order, there is an issue of fact whether the General Assignment assigned *all* claims arising out of the Indemnity Agreement from GR&S to GR&S Hotel. It remains an issue for trial whether GR&S remained the owner of the IBRC Litigation Claims and the Tank Collapse Claims upon execution of the

General Assignment.  If GR&S retained those claims, then the rights to those claims could not have been assigned by GR&S Hotel pursuant to the Deed of Trust, and GR&S remains the real party in interest with standing to pursue those claims. If, on the other hand, GR&S Hotel did become the owner of the rights to those claims, then those claims were irrevocably assigned to Newport Group, now the real party in interest.  In that case, the Release executed by Newport Group would reach and bar those claims.

The court concludes that the Legacy Repairs Claims were assigned to Newport Group upon the assignment of the Deed of Trust, and that Newport Group is the real party in interest to pursue those claims and has released those claims. GR&S has no remaining interest in those claims and cannot pursue them.  *See* *Commerce Mfg. Co. v. Blue Jeans Corp.*, 146 F. Supp. 15, 17 (E.D.N.C. 1956) ("N.C. General Statutes § 1-57 requires that every action must be prosecuted in the name of the real party in interest, and, to be sure, the one to whom there has been an absolute assignment is the 'real party in interest' rather than the assignor who has parted with all interest therein.")

Plaintiffs argue that the foreclosure sale can have no greater impact than the Receivership Order, which the court found did not wholly divest GR&S Hotel of standing.  *See* (Summary Judgment Order ¶¶ 38–43.)  Specifically, Plaintiffs contend that the assignment of the Deed of Trust did not vest *exclusive* rights to pursue claims under the Indemnity Agreement in Newport Group, and that until Newport Group institutes action or seeks to assume control over the pending litigation, GR&S Hotel remains a real party in interest and may continue prosecuting the current lawsuit.  (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Reconsider 3.)  Of course, Newport Group exercised control over the claims by executing the Release with its recitals.

The court does not agree with Plaintiffs that the language in the Receivership Order is of the same effect as the language in the Deed of Trust.  The language in the Receivership Order upon which the court based its decision in the Summary

Judgment Order that the receiver had the option, but not the exclusive right, to prosecute claims arising under the Indemnity Agreement included the following:

> The Receiver . . . shall have the following powers and instructions . . . :
>
> (b) to collect the past and future rents, additional rents, fees or revenues from leasing and other funds or revenues for the Property in order to preserve the Property until further Order of this Court or a foreclosure sale or sale by Receiver may be had;
>
> (l) to institute and prosecute suits, including proceedings in bankruptcy court, for the collection of rents and other charges now due or hereafter to become due or fixed . . .

(Aff. of H. William Hull, Attach. I, at 7–10, June 13, 2013.) In contrast, the Deed of Trust states that GR&S Hotel, by executing the Deed of Trust, does "irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Trustee for the benefit of Beneficiary, as nominee of Lender and its successors and assigns, to and under the following property, rights, interests and estates now owned, or hereafter acquired by [GR&S Hotel] . . . ." (Defs.' Mot. to Reconsider Attach. I § 1.1.) The language in the Deed of Trust unequivocally assigns GR&S Hotel's rights in the Hotel and the Indemnity Agreement.

The court further notes that, at the time of the Summary Judgment Order, the Receiver had not taken any steps to exercise its rights or powers to pursue claims, and the court "expresse[d] no further opinion as to whether the Receiver would be entitled upon request to assume control of the claims in this case . . . ." (Summary Judgment Order ¶ 43.) In contrast, to the extent Newport Group obtained ownership of the pending claims against Defendants, it had the right to release them and has released them.

The court concludes that there is a good and adequate basis to modify its earlier Order pursuant to Rule 60(b) and THEREFORE, IT IS ORDERED that:

1. Defendants' Motion is GRANTED in part, and DENIED in part;

2.  To the extent recoverable, if at all, GR&S' claim for attorneys' fees associated with the IBRC Litigation Claims are limited to those attorneys' fees incurred within three years of GR&S' filing of the initial lawsuit in Cartaret County on February 19, 2008;

3.  GR&S Hotel is no longer a real party in interest with standing to pursue claims arising out of the Indemnity Agreement, and all claims asserted by GR&S Hotel are hereby DISMISSED;

4.  GR&S retains the right to pursue claims arising out of the Indemnity Agreement so long as it retained them upon execution of the General Assignment; and

5.  The issues of whether the Tank Collapse Claim and the IBRC Litigation Claim were retained by GR&S upon execution of the General Assignment, and whether GR&S is otherwise entitled to recover on those claims, are reserved for trial.

This the 26th day of July, 2013.